TH/VAZ/KRA
F. #2026R00061

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       Docket No. 26-CR-108 (DLI)

    - against -

JOSHUA NASS,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X


## THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO <u>THE DEFENDANT'S PRETRIAL MOTIONS</u>


JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Victor Zapana
Kamil R. Ammari
Tanya Hajjar
Assistant U.S. Attorneys
    (Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................ 5

    I.    The Indictment Is Properly Pleaded.................................................... 5

        A.    Legal Standard ...................................................................... 5

            1.    Pleading Requirements for Indictments........................... 5

            2.    Rule 12(b)(3)..................................................................... 6

        B.    The Indictment Properly Pleads Aiding-and-Abetting Liability ............... 8

        C.    Count Two Is Sufficiently Pleaded ..................................... 12

        D.    Counts Four and Five Are Sufficiently Pleaded ................. 15

            1.    The Statutory Arguments Fail on the Merits ............... 15

                a.    Counts Four and Five Properly Track the Statutory Language........................... 16

                b.    Counts Four and Five Do Not Allege Attempts................ 18

                c.    The Defendant Misreads *Dennis*..................................... 21

            2.    The Constitutional Arguments Are Unripe and Lack Merit ......... 22

                a.    Legal Standard ................................................. 23

                b.    The As-Applied Challenges Are Unripe.......................... 25

                c.    The Facial Overbreadth Challenge Lacks Merit............... 26

                d.    To the Extent Raised, the Facial Vagueness Challenge Is Unripe and Lacks Merit ............................. 29

                e.    The Challenges to the State Statutes Are Unripe and Lack Merit............................. 30

    II.    The Defendant Is Not Entitled to a Bill of Particulars........................ 31

        A.    Legal Standard .................................................................... 32

        B.    Discussion........................................................................... 33

    III.    The Defendant Is Not Entitled to Additional Discovery Disclosures.................. 35

CONCLUSION........................................................................................................ 38

# TABLE OF AUTHORITIES

**Cases**

ACLU v. Alvarez,
   679 F.3d 583 (7th Cir. 2012) ................................................................................. 28

Birch Family Servs., Inc. v. Wlody,
   No. 19-CV-3301 (DLI), 2021 WL 2312852 (E.D.N.Y. June 7, 2021),
   aff'd, No. 21-1553, 2022 WL 1468160 (2d Cir. May 10, 2022) ............................ 28

Bishop v. Golden,
   302 F. Supp. 502 (E.D.N.Y. 1969) ........................................................................ 31

Boyce Motor Lines, Inc. v. United States,
   342 U.S. 337 (1952)................................................................................................. 7

Brady v. Maryland,
   373 U.S. 83 (1963)................................................................................................. 35

Broadrick v. Oklahoma,
   413 U.S. 601 (1973)............................................................................................... 23

Bucklew v. Precythe,
   587 U.S. 119 (2019)............................................................................................... 24

Commack Self-Service Kosher Meats, Inc. v. Hooker,
   680 F.3d 194 (2d Cir. 2012)................................................................................... 25

Costello v. United States,
   350 U.S. 359 (1956)............................................................................................ 2, 6

Counterman v. Colorado,
   600 U.S. 66 (2023)................................................................................................. 16

Farrell v. Burke,
   449 F.3d 470 (2d Cir. 2006)....................................................................... 24, 26, 29

Fields v. City of Philadelphia,
   862 F.3d 353 (3d Cir. 2017)................................................................................... 28

Giglio v. United States,
   405 U.S. 150 (1972)............................................................................................... 36

Gormley v. Dir., Conn. State Dep't of Probation,
   632 F.2d 938 (2d Cir. 1980)................................................................................... 26

Grayned v. City of Rockford,
408 U.S. 104 (1972) ....................................................................................... 24, 25

Gresham v. Peterson,
225 F.3d 899 (7th Cir. 2000) ............................................................................ 29

Hamling v. United States,
418 U.S. 87 (1974) ............................................................................................. 6

Kaley v. United States,
571 U.S. 320 (2014) ........................................................................................... 6

Kolender v. Lawson,
461 U.S. 352 (1983) ......................................................................................... 24

Members of City Council of L.A. v. Taxpayers for Vincent,
466 U.S. 789 (1984) ......................................................................................... 23

Moody v. NetChoice, LLC,
603 U.S. 707 (2024) ......................................................................................... 23

N.Y.S. Club Ass'n, Inc. v. City of New York,
487 U.S. 1 (1988) ............................................................................................. 24

Nicodemus v. City of South Bend, Ind.,
137 F.4th 654 (7th Cir. 2025) .......................................................................... 29

People v. Anatriello,
77 N.Y.S.3d 581 (3d Dep't 2018) .................................................................... 31

People v. Babits,
469 N.Y.S.2d 537 (Queens Cty. Sup. Ct. 1983),
aff'd, 498 N.Y.S.2d 315 (2d Dep't 1986) ........................................................ 12

People v. Caban,
696 N.Y.S.2d 1 (1st Dep't 1999) ..................................................................... 31

People v. Discala,
397 N.Y.S.2d 852 (1st Dep't 1977) .................................................................. 31

People v. Feldman,
791 N.Y.S.2d 361 (Kings Cty. Sup. Ct. 2005) ................................................. 31

People v. Graves,
820 N.Y.S.2d 476 (N.Y. Cty. Crim. Ct. 2006) ................................................ 31

People v. Medinas,
689 N.Y.S.2d 345 (Kings Cty. Sup. Ct. 1999)......................................................... 12

People v. Trepanier,
446 N.Y.S.2d 829 (4th Dep't 1982)........................................................................ 12

Project Veritas v. Schmidt,
125 F.4th 929 (9th Cir. 2025) (en banc) ............................................................... 29

Rose v. Locke,
423 U.S. 48 (1975)................................................................................................ 25

Russell v. United States,
369 U.S. 749 (1962).............................................................................................. 17

Russell v. United States,
No. 20-CR-427 (AMD), 2025 WL 552588 (E.D.N.Y. Feb. 19, 2025)...................... 28

Sekhar v. United States,
570 U.S. 729 (2013).............................................................................................. 27

Staley v. Jones,
239 F.3d 769 (6th Cir. 2001) ................................................................................ 30

United States v. Ackell,
907 F.3d 67 (1st Cir. 2018) ........................................................................ 23, 26, 29

United States v. Aiyer,
33 F.4th 97 (2d Cir. 2022) ................................................................................ 6, 18

United States v. Al Kassar,
582 F. Supp. 2d 488 (S.D.N.Y. 2008)..................................................................... 14

United States v. Al Kassar,
660 F.3d 108 (2d Cir. 2011)................................................................................... 13

United States v. Alfonso,
143 F.3d 772 (2d Cir. 1998)................................................................................ 7, 16

United States v. Archer,
486 F.2d 670 (2d Cir. 1973)............................................................................... 12, 13

United States v. Bandy,
No. 17-CR-3402 (MV), 2021 WL 876980 (D.N.M. Mar. 9, 2021)............................ 16, 26, 29

United States v. Beeman,
No. 01-CR-1141 (DAB), 2003 WL 22047871 (S.D.N.Y. Aug. 29, 2003)............................ 12

United States v. Bellot,
113 F.4th 1151 (9th Cir. 2024) ................................................................ 10

United States v. Biaggi,
675 F. Supp. 790 (S.D.N.Y. 1987) ........................................................... 34

United States v. Bortnovsky,
820 F.2d 572 (2d Cir. 1987).............................................................. 32, 33

United States v. Bowker,
372 F.3d 365 (6th Cir. 2004),
vacated, 543 U.S. 1182 (2005),
and reinstated in relevant part, 125 F. App'x 701 (6th Cir. 2005)..................... 16, 30

United States v. Brecht,
540 F.2d 45 (2d Cir. 1976),
overruled on other grounds by Perrin v. United States, 444 U.S. 37 (1979) ............. 31

United States v. Campbell,
426 F.2d 547 (2d Cir. 1970).................................................................... 8

United States v. Carll,
105 U.S. 611 (1882) ............................................................................ 6

United States v. Christianson,
No. 19-CR-140 (PPS), 2021 WL 1750085 (N.D. Ind. May 4, 2021) ..................... 25

United States v. Cooper,
No. 17-CR-296 (PKC), 2020 WL 2307646 (E.D.N.Y. May 8, 2020) ..................... 18

United States v. Curley,
No. 08-CR-404 (SCR), 2009 WL 10688209 (S.D.N.Y. July 15, 2009) .................. 28

United States v. Davidoff,
845 F.2d 1151 (2d Cir. 1988).................................................................. 34

United States v. De La Pava,
268 F.3d 157 (2d Cir. 2001).................................................................... 6

United States v. Delacruz,
970 F. Supp. 2d 199 (S.D.N.Y. 2013)......................................................... 9

United States v. Dennis,
132 F.4th 214 (2d Cir. 2025) ............................................................. 15, 21

United States v. Elkins,
725 F. Supp. 3d 570 (N.D. Tex. 2024),

vacated in part on other grounds, 161 F.4th 899 (5th Cir. 2025),
petition for cert. filed, No. 25-1061 (U.S. filed Mar. 4, 2026) ................................................ 20

United States v. Elson,
968 F. Supp. 900 (S.D.N.Y. 1997) ............................................................................................. 7

United States v. Farhane,
634 F.3d 127 (2d Cir. 2011) ............................................................................................. 26, 29

United States v. Feola,
651 F. Supp. 1068 (S.D.N.Y. 1987),
aff'd, 875 F.2d 857 (2d Cir. 1989) ........................................................................................... 32

United States v. Fleury,
20 F.4th 1353 (11th Cir. 2021) ................................................................................... 16, 20, 26

United States v. Fruchter,
104 F. Supp. 2d 289 (S.D.N.Y. 2000) ................................................................................ 32, 33

United States v. Goldberg,
756 F.2d 949 (2d Cir. 1985) ....................................................................................................... 7

United States v. Gotti,
No. 02-CR-743 (RCC), 2004 WL 32858 (S.D.N.Y. Jan. 6, 2004) ............................................ 8

United States v. Greenberg,
No. 21-CR-92 (AJN), 2022 WL 827304 (S.D.N.Y. Mar. 9, 2022) ......................................... 24

United States v. Gross,
23 F.4th 1048 (8th Cir. 2022) .............................................................................................. 18, 20

United States v. Gullett,
713 F.2d 1203 (6th Cir. 1983) .................................................................................................. 34

United States v. Gunn,
162 F.4th 319 (2d Cir. 2025) .................................................................................................... 11

United States v. Hansen,
599 U.S. 762 (2023) .................................................................................................................. 24

United States v. Helbrans,
547 F. Supp. 3d 409 (S.D.N.Y. 2021) ...................................................................................... 17

United States v. Henry,
No. 13-CR-220 (RJD), 2015 WL 1258173 (E.D.N.Y. Mar. 18, 2015) ................................... 14

United States v. Hernandez,
  980 F.2d 868 (2d Cir. 1992)............................................................................... 6

United States v. Hobgood,
  868 F.3d 744 (8th Cir. 2017) ........................................................................... 29

United States v. Ivic,
  700 F.2d 51 (2d Cir. 1983),
  abrogated in part on other grounds by Nat'l Org. for Women, Inc v. Scheidler, 510 U.S. 249
  (1994) ............................................................................................................... 11

United States v. Jackson,
  196 F.3d 383 (2d Cir. 1999)............................................................................. 31

United States v. Jackson,
  986 F. Supp. 829 (S.D.N.Y. 1997),
  aff'd on reh'g, 196 F.3d 383 (2d Cir. 1999) .................................................... 31

United States v. Jenkins,
  No. 02-CR-1384 (RCC), 2003 WL 1461477 (S.D.N.Y. Mar. 21, 2003).................................. 37

United States v. Ji,
  No. 21-CR-265 (PKC), 2022 WL 595259 (E.D.N.Y. Feb. 28, 2022) ...................................... 17

United States v. Jordan,
  591 F. Supp. 2d 686 (S.D.N.Y. 2008),
  aff'd, 639 F. App'x 768 (2d Cir. 2016)............................................................. 20

United States v. Jordan,
  927 F.2d 53 (2d Cir. 1991)............................................................................... 11

United States v. Lambus,
  No. 15-CR-382 (JBW), 2016 WL 4536867 (E.D.N.Y. Aug. 30, 2016) .................................... 37

United States v. Larson,
  807 F. Supp. 2d 142 (W.D.N.Y. 2011),
  aff'd in relevant part sub nom. United States v. Kirsch, 903 F.3d 213 (2d Cir. 2018)............. 31

United States v. Lewis,
  682 F. Supp. 3d 1038 (S.D. Ala. 2023)............................................................. 25

United States v. Mangione,
  818 F. Supp. 3d 509 (S.D.N.Y. 2026)........................................................ 21, 22

United States v. McMahon,
  No. 21-CR-265 (PKC), 2024 WL 896838 (E.D.N.Y. Mar. 1, 2024)....................................... 28

United States v. Messina,
   No. 11-CR-31 (KAM), 2012 WL 463973 (E.D.N.Y. Feb. 13, 2012).........................................1

United States v. Oates,
   560 F.2d 45 (2d Cir. 1977)...........................................................................................8

United States v. Oury,
   No. 19-CR-80 (RSB), 2019 WL 8440692 (S.D. Ga. Dec. 10, 2019),
   report and recommendation adopted, No. 19-CR-80 (RSB), 2020 WL 555377 (S.D. Ga. Feb.
   4, 2020) ...............................................................................................................30

United States v. Parker,
   165 F. Supp. 2d 431 (W.D.N.Y. 2001) .......................................................................11

United States v. Partida,
   385 F.3d 546 (5th Cir. 2004) .....................................................................................10

United States v. Perez,
   575 F.3d 164 (2d Cir. 2009).....................................................................................7, 8

United States v. Petrovic,
   701 F.3d 849 (8th Cir. 2012) ....................................................................................29

United States v. Piervinanzi,
   23 F.3d 670 (2d Cir. 1994).......................................................................................18

United States v. Pimentel,
   No. 99-CR-1104 (SJ), 2001 WL 185053 (E.D.N.Y. Jan. 22, 2001).....................................32

United States v. Pope,
   613 F.3d 1255 (10th Cir. 2010) ..............................................................................6, 25

United States v. Price,
   No. 05-CR-492 (NGG), 2010 WL 1949361 (E.D.N.Y. May 11, 2010) ..................................7

United States v. Pugh,
   No. 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015)..................................33

United States v. Ragano,
   740 F. Supp. 3d 179 (E.D.N.Y. 2024) ....................................................................17, 34

United States v. Raniere,
   384 F. Supp. 3d 282 (E.D.N.Y. 2019) .........................................................................7

United States v. Reale,
   No. 96-CR-1069 (DAB), 1997 WL 580778 (S.D.N.Y. Sept. 17, 1997)...............................7, 8

United States v. Resendiz-Ponce,
549 U.S. 102 (2007)................................................................................................. 17

United States v. Rittweger,
259 F. Supp. 2d 275 (S.D.N.Y. 2003)...................................................................... 34

United States v. Rivera,
No. 09-CR-619 (SJF), 2011 WL 1429125 (E.D.N.Y. Apr. 13, 2011)...................... 32

United States v. Sampson,
898 F.3d 270 (2d Cir. 2018)...................................................................................... 7

United States v. Samuels,
308 F.3d 662 (6th Cir. 2002) ................................................................................... 10

United States v. Sattar,
314 F. Supp. 2d 279 (S.D.N.Y. 2004)...................................................................... 33

United States v. Sayer,
748 F.3d 425 (1st Cir. 2014)..................................................................................... 29

United States v. Sergentakis,
No. 15-CR-33 (NSR), 2015 WL 3763988 (S.D.N.Y. June 15, 2015) ...................... 28

United States v. Shabani,
513 U.S. 10 (1994)................................................................................................... 18

United States v. Shkreli,
No. 15-CR-637 (KAM), 2016 WL 8711065 (E.D.N.Y. Dec. 16, 2016) .................. 32

United States v. Shrader,
675 F.3d 300 (4th Cir. 2012) ................................................................................... 20

United States v. Shrader,
No. 09-CR-270 (ICB), 2010 WL 2179570 (S.D.W. Va. May 26, 2010),
aff'd, 675 F.3d 300 (4th Cir. 2012).......................................................................... 30

United States v. Shteyman,
No. 10-CR-347 (SJ), 2011 WL 2006291 (E.D.N.Y. May 23, 2011)........................ 33

United States v. Silverman,
430 F.2d 106 (2d Cir. 1970)..................................................................................... 5

United States v. Stavroulakis,
952 F.2d 686 (2d Cir. 1992)..................................................................................... 6

United States v. Stevens,
559 U.S. 460 (2010)......................................................................................... 23

United States v. Stringer,
730 F.3d 120 (2d Cir. 2013)............................................................................ 6, 17

United States v. Thornton,
No. 21-CR-878 (KJG), 2021 WL 5578902 (D.N.M. Nov. 29, 2021)..................................... 30

United States v. Trippe,
171 F. Supp. 2d 230 (S.D.N.Y. 2001).................................................................... 33

United States v. Valdez,
No. 20-CR-115 (ALC), 2021 WL 1317548 (S.D.N.Y. Apr. 9, 2021) ................................... 17

United States v. Vangdy,
No. 23-CR-10027 (JWB), 2024 WL 3291743 (D. Kan. July 3, 2024)................................... 25

United States v. Wallace,
85 F.3d 1063 (2d Cir. 1996)............................................................................ 13, 14

United States v. Walsh,
194 F.3d 37 (2d Cir. 1999)............................................................................. 5, 6

United States v. Washington,
106 F.3d 983 (D.C. Cir. 1997) (per curiam) ........................................................... 9, 10

United States v. Wedd,
993 F.3d 104 (2d Cir. 2021)............................................................................... 7

United States v. Williams,
553 U.S. 285 (2008)............................................................................... 23, 24, 25

United States v. Wilson,
493 F. Supp. 2d 364 (E.D.N.Y. 2006) .................................................................... 32

United States v. Yannotti,
541 F.3d 112 (2d Cir. 2008)........................................................................... 7, 16

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
455 U.S. 489 (1982)................................................................................... 26, 29

Virginia v. Black,
538 U.S. 343 (2003).................................................................................... 16

Virginia v. Hicks,
539 U.S. 113 (2003)................................................................................... 23, 24

<u>Ward v. Rock Against Racism</u>,
  491 U.S. 781 (1989) ........................................................................................ 25

**<u>Statutes</u>**

18 U.S.C. § 1951 ........................................................................................... 1, 4

18 U.S.C. § 1952 ........................................................................................... 1, 4

18 U.S.C. § 2 ..................................................................................................... 8

18 U.S.C. § 2261 ........................................................................................... 1, 4

18 U.S.C. § 2261A .................................................................................... passim

18 U.S.C. § 2266 ............................................................................................. 20

18 U.S.C. § 3500 ............................................................................................. 37

N.Y. Penal Law § 135.60 ........................................................................... 30, 31

N.Y. Penal Law § 155.05 ........................................................................... 30, 31

N.Y. Penal Law § 20.00 .................................................................................. 12

N.Y. Penal Law § 20.05 .................................................................................. 12

Pub. L. No. 106-386, 114 Stat. 1464 (2000) ................................................... 18

Pub. L. No. 109-162, 119 Stat. 2960 (2006) ................................................... 22

Pub. L. No. 113-4, 127 Stat. 54 (2013) ........................................................... 18

**<u>Other Authorities</u>**

Hon. Leonard B. Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u> ................................................. 19

Jury Inst., <u>United States v. McMahon</u>,
  No. 21-CR-265 (PKC) (E.D.N.Y.), ECF No. 256 .................................................... 19

<u>Place</u>, Merriam-Webster.com ................................................................. 27

<u>Place</u>, New Oxford American Dictionary (3d ed. 2015) ................................................. 27

<u>Place</u>, The American Heritage Dictionary (5th ed. 2022) ................................................. 27

<u>Place</u>, The Oxford English Dictionary (2d ed. 1989) ................................................. 27

Surveillance, Merriam-Webster.com ........................................................................... 27

Surveillance, New Oxford American Dictionary (3d ed. 2015) ................................... 27

Surveillance, The American Heritage Dictionary (5th ed. 2022) ................................ 27

Surveillance, The Oxford English Dictionary (2d ed. 1989) ....................................... 27

Trial Tr., United States v. Nagel,
No. 10-CR-511 (JBW) (E.D.N.Y.), ECF No. 60 ................................................ 19, 20

## Rules

Fed. R. Crim. P. 12 ........................................................................................... 6, 7, 25

Fed. R. Crim. P. 16 ......................................................................................... 2, 35, 37

Fed. R. Crim. P. 29 ................................................................................................... 7

Fed. R. Crim. P. 7 ......................................................................................... 1, 5, 32

## Treatises

2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law (1986) .......................... 11

William C. Donnino, Practice Commentary, McKinney's Consolidated Laws of New York ..... 31

## Constitutional Provisions

U.S. Const. amend. I .......................................................................................... passim

U.S. Const. amend. V ................................................................................ 5, 22, 24, 25

U.S. Const. amend. VI ............................................................................................. 5

PRELIMINARY STATEMENT

The six-count indictment in this case (the "Indictment") arises out of the defendant Joshua Nass's scheme to extort a former client and the client's family into giving the defendant money that the defendant claimed he was owed. Specifically, between December 2025 and March 2026, the defendant enlisted an individual who was cooperating with law enforcement (the "CW") to harass and intimidate the former client and his family members into paying the alleged debt. The defendant used facilities of interstate commerce, including his cellphone, and traveled in interstate commerce in furtherance of his plan to surveil, harass, and intimidate his victims.

For these crimes, the Indictment charges the defendant with one count of attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a) (Count One); three counts of violating the Travel Act, in violation of 18 U.S.C. § 1952(a)(3)(A) (Counts Two, Three, and Six); one count of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(5) (Count Four); and one count of interstate stalking, in violation of 18 U.S.C. §§ 2261A(1)(B) and 2261(b)(5) (Count Five). (See generally Ind., ECF No. 28.)

The government respectfully submits this memorandum in opposition to the defendant's pretrial motions (1) to dismiss, (2) for a bill of particulars, and (3) to compel disclosure. Contrary to the defendant's assertions, the Indictment properly alleges all six counts under Rule 7(c) of the Federal Rules of Criminal Procedure. The defendant's arguments rely on unsupported, extra-record factual assertions and make clear that he has "confuse[d] the standards of pleading with [the] standard of proof." United States v. Messina, No. 11-CR-31 (KAM), 2012 WL 463973, at *4 (E.D.N.Y. Feb. 13, 2012). A grand jury returned an indictment that is "valid

on its face"—which is "enough to call for trial of the charge on the merits." <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956).

Furthermore, the motions raise unripe and unpersuasive constitutional claims, misconstrue relevant case law in the Second Circuit, and rely on cases that have little or no bearing on the motions. Indeed, the defendant fails to cite any case in which a federal court has dismissed any of the counts charged here before trial for any of the bases he urges.

With respect to the defendant's motion to compel disclosure, the government has already provided materials and information responsive to several of the defendant's requests. To the extent the defendant seeks additional law enforcement reports or witness statements, such records are plainly not discoverable under Rule 16.

Accordingly, and for the reasons set forth below, the Court should reject all the defense arguments and deny the motions in their entirety.

<u>BACKGROUND</u>

The defendant is charged for his attempts to extort a former client and the client's family members into paying an alleged debt by, among other things, directing a CW to surveil, harass, and intimidate his victims. Specifically, as set forth in the Complaint and various court filings, the defendant told the CW that his former client ("John Doe 1") owed the defendant $500,000 for what the defendant described as lobbying services rendered on behalf of John Doe 1. (Compl. ¶ 4, ECF No. 1.) According to the defendant, who traveled to New York to meet with the CW, John Doe 1 had told the defendant that he could not pay the remaining balance, and John Doe 1's son, John Doe 2, had asked the defendant for a payment plan, which the defendant considered an "insult." (<u>Id.</u>) When the CW suggested that the defendant attempt to collect the debt through the courts, the defendant responded, "I am not going to no court. That's not how I work." (<u>See id.</u>) The defendant directed the CW to approach John Doe 2 at his home and intimidate him into paying the defendant. (<u>Id.</u> ¶ 5.)

After the CW (falsely) told the defendant that the CW had visited John Doe 2's home, the defendant paid the CW $3,000 for his services up to that point and agreed to pay the CW thousands more. (<u>Id.</u> ¶¶ 6-8.) The defendant told the CW that he wanted John Doe 2 to understand that the defendant would not accept nonpayment and discussed the possibility of forcing John Doe 2 from his residence into a car and physically assaulting John Doe 2. (<u>Id.</u> ¶¶ 10-12.) The defendant indicated that, in his dealings with John Doe 2, the CW should not treat John Doe 2 "like a human." (<u>Id.</u>)

On March 13, 2026, law enforcement arrested the defendant on the Complaint in New York. On April 22, 2026, a grand jury returned the Indictment charging the defendant with several crimes relating to his extortion scheme. Specifically, the Indictment charges the defendant with (1) one count of attempted Hobbs Act extortion, in violation of 18 U.S.C.

3

§ 1951(a) (Count One); (2) three counts of violating the Travel Act, in violation of 18 U.S.C.

§ 1952(a)(3)(A) (Counts Two, Three, and Six); (3) one count of cyberstalking, in violation of 18

U.S.C. §§ 2261A(2)(B) and 2261(b)(5) (Count Four); and (4) one count of interstate stalking, in

violation of 18 U.S.C. §§ 2261A(1)(B) and 2261(b)(5) (Count Five).

<u>ARGUMENT</u>

For the reasons set forth below, each of the defendant's motions lacks merit, and this Court should deny them in their entirety.

I.      <u>The Indictment Is Properly Pleaded</u>

The defendant seeks to dismiss the Indictment on several grounds. In so doing, the defendant engages in a strained reading of the Indictment that is belied by its plain language, he relies on facts that are not in the record, and he ignores well-settled case law. As noted above, the defendant cites no case in which any federal court has dismissed any of the charged crimes here before trial on the grounds that he urges. This Court should reject his arguments.

A.      <u>Legal Standard</u>

1.      <u>Pleading Requirements for Indictments</u>

Under Rule 7(c), an indictment need contain only a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). As the Second Circuit has explained, Rule 7(c)

> performs three constitutionally required functions: It fulfills the Sixth Amendment right "to be informed of the nature and cause of the accusation[";] it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury.

<u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir. 1999) (quoting <u>United States v. Silverman</u>, 430 F.2d 106, 110 (2d Cir. 1970)).

An indictment satisfies Rule 7(c)—and therefore the Fifth and Sixth Amendments—if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>United States v.</u>

5

Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"  Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).  In determining whether a count sufficiently pleads an offense, the Court reads the indictment "in its entirety."  United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992).

2.      Rule 12(b)(3)

Rule 12 authorizes non-jurisdictional motions only if "the [C]ourt can determine [them] without a trial on the merits," Fed. R. Crim. P. 12(b)(1), and a defendant lacks any "'right to judicial review'" of an indictment "[b]eyond a Rule 12 motion," United States v. Aiyer, 33 F.4th 97, 116 (2d Cir. 2022) (quoting Kaley v. United States, 571 U.S. 320, 333 (2014)); see also United States v. Pope, 613 F.3d 1255, 1259 (10th Cir. 2010) ("If contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.").

The dismissal of an indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights."  United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted); Walsh, 194 F.3d at 45 (noting that federal courts should not dismiss an indictment for lack of specificity absent a showing of prejudice).  A facially valid "indictment returned by" a proper grand jury is "enough to call for trial of the charge on the merits."  Costello, 350 U.S. at 363.  On a pretrial motion to dismiss, the Court

6

must take as true the allegations in the indictment.  See Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952); United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985).

To withstand a motion to dismiss pursuant to Rule 12(b)(3)(B), the indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (quoting United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998)); accord United States v. Raniere, 384 F. Supp. 3d 282, 298 (E.D.N.Y. 2019); United States v. Price, No. 05-CR-492 (NGG), 2010 WL 1949361, at *5 (E.D.N.Y. May 11, 2010); United States v. Reale, No. 96-CR-1069 (DAB), 1997 WL 580778, at *6-7 (S.D.N.Y. Sept. 17, 1997).

A defendant's factual arguments challenging facially valid pleadings do not justify pretrial dismissal under Rule 12(b)(3).  "[S]ummary judgment does not exist in federal criminal procedure."  United States v. Sampson, 898 F.3d 270, 282 (2d Cir. 2018).  Where the indictment meets "the basic pleading requirements and was valid on its face," a defendant lacks any "basis to challenge the sufficiency of the indictment before trial."  United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009).  The government is entitled to marshal and present its evidence at trial, and federal courts "evaluate the adequacy of the facts" only "after trial." United States v. Wedd, 993 F.3d 104, 121 (2d Cir. 2021); see Fed. R. Crim. P. 29; see also, e.g., Reale, 1997 WL 580778, at *6 ("As the Government aptly states in its opposition, 'while [D]efendants' arguments may properly be considered on a motion under Rule 29 of the Federal Rules of Criminal Procedure after the Government presents its proof, they do not support dismissal of the Indictment at this stage of the proceedings.'" (alteration in original) (citation omitted)); United States v. Elson, 968 F. Supp. 900, 905 (S.D.N.Y. 1997) ("[I]t is well established that an Indictment that is valid on its face may not be dismissed on the ground that it

7

is based on inadequate or insufficient evidence." (collecting cases)). A motion to dismiss a facially valid indictment based on the alleged insufficiency of the evidence "confuse[s] standards of pleading with standards of proof." Reale, 1997 WL 580778, at *7; see also, e.g., Perez, 575 F.3d at 166 ("The Defendants, however, had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004) ("Defendants will have other opportunities to contest the sufficiency of the Government's evidence, but a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion.").

   B.  The Indictment Properly Pleads Aiding-and-Abetting Liability

   The defendant is charged in each count as a principal and an aider-and-abettor. This is because the defendant (a) engaged in conduct that violated the relevant statutes and (b) enlisted others to take actions that would violate the relevant statutes. See 18 U.S.C. § 2 (providing that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission," or "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal"); see also United States v. Oates, 560 F.2d 45, 54 (2d Cir. 1977) ("'[A]iding and abetting' does not constitute a discrete criminal offense but only serves as a more particularized way of identifying the 'persons involved' in the commission of the [crime], and serves to describe how those 'person(s) involved,' committed the [crime]." (quoting United States v. Campbell, 426 F.2d 547, 553 (2d Cir. 1970)).

The defendant argues he cannot be liable for aiding-and-abetting a government agent as a matter of law.[1]  As a preliminary matter, the defendant's challenge is not properly raised on a motion to dismiss.  See, e.g., United States v. Delacruz, 970 F. Supp. 2d 199, 202 n.4 (S.D.N.Y. 2013) (explaining that arguments as to whether the defendant "can be prosecuted under an 'aiding and abetting' theory" were "improper" on a pretrial motion to dismiss).

The defendant is also wrong, as courts have made clear that a defendant may be charged with attempting to aid and abet a crime.  For example, in United States v. Washington, 106 F.3d 983 (D.C. Cir. 1997) (per curiam), the D.C. Circuit rejected arguments that defendants could not be convicted of aiding and abetting attempted possession of drugs where the defendants, who were police officers, agreed to provide protection to law enforcement agents posing as narcotics traffickers.  The defendants there argued that the charge and evidence were insufficient to establish their guilt since the principals—the undercover law enforcement agents—did not have the intent to commit the crime they attempted to aid and abet.  Id. at 1003. But the Washington panel determined that the evidence was sufficient to establish the crime of attempting to aid and abet possession of narcotics with intent to distribute:

> If (as here), the principal had only pretended to commit the crime, and the accomplice attempted to aid the principal by "engag[ing] in conduct that would have established his complicity had the crime been committed," the accomplice may also be charged with an attempt to commit the crime. . . .  [T]he prosecution need not show that an offense was actually committed, nor that the principal and accomplice had a "shared intent."  As with other attempt crimes, the focus of the court's analysis shifts away from external

---

[1]      As noted above, the government charges the defendant as a principal in each of the counts of the Indictment.  The government anticipates that the evidence at trial will show that the defendant also communicated with other individuals, who were not government agents, in furtherance of his extortionate scheme.  Neither of these theories is implicated by the defendant's challenge, and for the reasons explained in below, the government respectfully submits that the defendant is not entitled to further particulars on the government's theory of the case at this time.

circumstances to an examination of the defendant's intent and actions in furtherance of that intent.

Id. at 1005 (internal citation omitted).

Other Courts of Appeals squarely presented with the same question have reached the same conclusion. See United States v. Partida, 385 F.3d 546, 555 (5th Cir. 2004) ("[I]f the principal had only pretended to commit the crime, and the accomplice attempted to aid the principal by 'engaging in conduct that would have established his complicity had the crime been committed,' the accomplice is culpable for attempting to commit the crime." (quoting Washington, 106 F.3d at 1005)). But cf. United States v. Samuels, 308 F.3d 662, 669 (6th Cir. 2002) (stating, in dicta and without analysis or citation, that "an attempt to aid and abet is not a crime").

Most recently, in United States v. Bellot, 113 F.4th 1151 (9th Cir. 2024), the Ninth Circuit upheld a conviction for attempting to possess cocaine under an aiding-and-abetting theory where the defendant met with a confidential source and advised him on how to smuggle a package of (fake) cocaine through security at San Francisco International Airport, id. at 1154-55. In affirming the defendant's conviction, the court explained that a defendant can be guilty of attempting to aid and abet a crime where the "principal only pretends to commit the possession crime," if "the defendant attempts to support the principal by engaging in conduct that would have established his complicity had the crime been committed." Id. at 1155 (quoting Washington, 106 F.3d at 1005). "[A]ll that mattered was that [the defendant] attempted to aid and abet the possession of cocaine by someone who [he] reasonably believed had the intent to distribute it." Id. at 1157.

The rationale underpinning this line of cases is straightforward: "[t]hose who aid and abet [an undercover agent] cannot expect insulation from criminal responsibility." United

10

States v. Jordan, 927 F.2d 53, 55 (2d Cir. 1991). And attempts concern "the dangerousness of the actor, as a person manifesting a firm disposition to commit a crime, not the [actual] dangerousness of his conduct." United States v. Gunn, 162 F.4th 319, 329 (2d Cir. 2025) (quoting United States v. Ivic, 700 F.2d 51, 66 (2d Cir. 1983) (Friendly, J.), abrogated in part on other grounds by Nat'l Org. for Women, Inc v. Scheidler, 510 U.S. 249 (1994)). Indeed, as the only court in the Second Circuit to confront this question has explained, "[a]t common law, '[f]actual impossibility, where the intended substantive crime is impossible of accomplishment merely because of some physical impossibility unknown to the defendant, is not a defense.'" United States v. Parker, 165 F. Supp. 2d 431, 469 (W.D.N.Y. 2001) (quoting 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law 41 (1986)). So even if a government agent never intended to complete the substantive crime that the defendant tried to aid and abet, "such intention is merely a fact unknown to [the defendant] which prevents completion of the crime but does not exonerate [the defendant] as a principal or as an aider and abettor in the alleged attempt to violate" the statute in question. Id. That decision, Parker, explicitly rejected the comparison the defendant makes to conspiracy law, noting that "in contrast to conspiracy, an attempt depends on the intent and conduct of the defendant alone." Id. at 469 n.6.

Just as in the cases discussed above, the evidence at trial will demonstrate, among other things, that the defendant took actions to induce the CW to commit the crime of Hobbs Act extortion, and the only reason that attempt was not successful was because the defendant

11

unwittingly enlisted a government agent in his extortionate scheme.[2]  Because this theory of

liability is squarely supported by the facts and the case law, the defendant's motion should be

denied.  Indeed, dismissal would be particularly inappropriate here given that the defendant's

argument, at bottom, is a claim that the evidence will be insufficient to show that the defendant's

actions violated the charged statutes, which, as explained above, is not a proper basis to dismiss a

properly pled and facially valid indictment.

> C.      Count Two Is Sufficiently Pleaded

The defendant next argues that the Court should dismiss the Travel Act charge in

Count Two because federal jurisdiction was allegedly "manufactured" by a government agent.

This argument is also an evidentiary challenge that is inappropriately addressed on a pretrial

motion to dismiss.  The claim also fails on the merits.

The defendant relies on United States v. Archer, 486 F.2d 670 (2d Cir. 1973),

which involved a sting operation intended to root out corruption in the New York City's criminal

justice system, id. at 672.  In Archer, federal jurisdiction "hinged on interstate conversations

between undercover agents and the individuals targeted by the investigation."  United States v.

Beeman, No. 01-CR-1141 (DAB), 2003 WL 22047871, at *2 (S.D.N.Y. Aug. 29, 2003) (citing

---

[2]      The outcome is the same to the extent the defendant argues the defendant cannot be liable of attempting to aid-and-abet a government agent under the relevant New York State law offenses, given that the New York Penal Law explicitly precludes this argument.  See N.Y. Penal Law § 20.05(1) ("In any prosecution for an offense in which the criminal liability of the defendant is based upon the conduct of another person pursuant to section 20.00, it is no defense that: 1. Such other person is not guilty of the offense in question owing to . . . factors precluding the mental state required for the commission of the offense in question."); see also, e.g., People v. Trepanier, 446 N.Y.S.2d 829, 832 (4th Dep't 1982) (undercover officer); People v. Medinas, 689 N.Y.S.2d 345, 352 (Kings Cty. Sup. Ct. 1999) (undercover officer); People v. Babits, 469 N.Y.S.2d 537, 540 (Queens Cty. Sup. Ct. 1983) (confidential informant), aff'd, 498 N.Y.S.2d 315 (2d Dep't 1986).

Archer, 486 F.2d at 672-74).  During the investigation, "[g]overnment agents placed telephone calls to the targets of the investigation and left out-of-state telephone numbers at which the agents could purportedly be reached," and "[w]hen those phone calls were returned by the targets, across state lines, the Government alleged that the 'use of a facility in interstate commerce' element of the Travel Act had been satisfied."  Id. (citing Archer, 486 F.2d at 672-74).  Archer disagreed, finding that "the federal officers themselves supplied the interstate element," and adding on rehearing that "there is no indication that the defendants agreed either to make or to cause to be made any interstate or foreign telephone calls."  486 F.2d at 682-85.

More recently, however, the Second Circuit has provided a "proper understanding of Archer's limited precedential force," observing that "[c]ourts that have construed Archer have taken pains to limit its applicability and to explain that 'manufactured jurisdiction' as an independent doctrine is a dubious concept."  United States v. Wallace, 85 F.3d 1063, 1065-67 (2d Cir. 1996) (citations omitted).  "Courts have refused to follow Archer when there is any link between the federal element and a voluntary, affirmative act of the defendant."  Id. at 1066. "Thus, when confronted with situations in which (i) the FBI introduces a federal element into a non-federal crime and (ii) the defendant takes voluntary actions that implicate the federal element, [the Second Circuit] has consistently held that federal jurisdiction has not been improperly 'manufactured' and that the statutory elements have been met."  Id.; see also United States v. Al Kassar, 660 F.3d 108, 120 (2d Cir. 2011) ("Now, even if the government initiates an essential element of a crime, jurisdiction is not manufactured if the defendant 'then takes voluntary actions that implicate the [government-initiated] element.'" (alteration in original) (quoting Wallace, 85 F.3d at 1066)).

13

Here, the evidence clearly establishes a "link between the federal element and a voluntary, affirmative act of the defendant." Wallace, 85 F.3d at 1066. The defendant himself initiated interstate communications by calling and texting the CW to introduce himself and to enlist the CW's help in his scheme to extort his former client and the client's family. The defendant then continued, on multiple occasions, to communicate with the CW in furtherance of the scheme and to travel in interstate commerce to meet with the CW. Each one of these individual actions was a voluntary "active step[] towards consummating" the charged crimes, "which is enough for jurisdictional purposes." United States v. Al Kassar, 582 F. Supp. 2d 488, 494 (S.D.N.Y. 2008); see also, e.g., Wallace, 85 F.3d at 1067 (explaining that, "[u]nlike the conspirators in Archer, who never agreed to make any interstate phone calls, Wallace and his coconspirators clearly undertook to pressure Vinny to withdraw money from Citibank," a federally insured institution); United States v. Henry, No. 13-CR-220 (RJD), 2015 WL 1258173, at *3 (E.D.N.Y. Mar. 18, 2015) (declining to dismiss charges based on Archer, where federal agent suggested defendants travel to New Jersey because the defendants "of their own volition, chose to get in their vehicle . . . and drive to Jersey City, New Jersey, allegedly for the sole purpose of undertaking their planned sexual abuse of the victims"); United States v. Beeman, No. 01-CR-1141 (DAB), 2003 WL 22047871, at *3 (S.D.N.Y. Aug. 29, 2003) (same, where defendant used interstate facilities before involvement of federal agent). And again, dismissal would be particularly inappropriate here given that the defendant's argument is, at bottom, one of the sufficiency of the evidence, and there is no basis to dismiss a properly pleaded and facially valid indictment on that ground.

14

D.    Counts Four and Five Are Sufficiently Pleaded

The defendant seeks to dismiss Counts Four and Five of the Indictment by raising a series of statutory and constitutional challenges.  These arguments are meritless and should be rejected.

1.    The Statutory Arguments Fail on the Merits

The defendant first raises two arguments focused on the structure and text of 18 U.S.C. § 2261A, neither of which finds any support in the case law and serves as a basis for dismissal at this pretrial stage.

First, the defendant argues that Counts Four and Five are facially deficient because they do not properly allege the elements of the offenses.  According to the defendant, the elements of Counts Four and Five are "(1) a course of conduct; (2) an intent to harm; and (3) an intent to cause a certain specified result."  (Br. 12.)  The defendant describes the first element as the "actus re[u]s, or Act Element," the second element as the "Intent Element," and the third element as the "Result Element."  (Br. 12-14.)  The defendant then goes on to argue (incorrectly) that the Indictment charges the defendant with only attempting to engage in a course of conduct, the first alleged element, and therefore that the charges are deficient as a matter of law.[3]  (Id. at 15.)  This argument, however, misstates and conflates the elements of the offenses in question and misreads the allegations in the Indictment.

Second, the defendant argues that Counts Four and Five are facially deficient because they are not premised on threats that were in fact conveyed to the victims.  This argument relies on a misreading of United States v. Dennis, 132 F.4th 214, 224 (2d Cir. 2025), to

---

[3]    In making this statutory argument, the defendant repeatedly mischaracterizes the case as a "undercover government 'sting' operation."  (Br. 10, 18).

15

conclude that the interstate stalking can only be prosecuted under a theory of true threats.  (See Br. 19 ("Only 'True Threats' Are Punishable Under the Stalking Statute . . . .")).[4]  This argument, however, is both premature and lacks merit.  Therefore, this Court should deny the motion to dismiss.

a.    Counts Four and Five Properly Track the Statutory Language

As an initial matter, there is no basis to dismiss Counts Four and Five, which are properly pleaded.  Courts have routinely denied motions to dismiss § 2261A counts where, as here, the charging language closely tracked the statutory language.  See, e.g., United States v. Bandy, No. 17-CR-3402 (MV), 2021 WL 876980, at *1 (D.N.M. Mar. 9, 2021); accord United States v. Fleury, 20 F.4th 1353, 1366 (11th Cir. 2021) (holding that § 2261A(2)(B) indictment tracking "language of the statute" gave "adequate notice"); United States v. Bowker, 372 F.3d 365, 377 (6th Cir. 2004) (upholding indictment "track[ing] the language of the" travel stalking and cyberstalking provisions), vacated, 543 U.S. 1182 (2005), and reinstated in relevant part, 125 F. App'x 701 (6th Cir. 2005).

The defendant argues that the counts do not provide fair notice of the charges against him.  These arguments are without merit because "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crimes."  Yannotti, 541 F.3d at 127 (quoting Alfonso, 143 F.3d at 776).  Among other things, the Complaint and the detention letter filed in this case set out a factual basis for the allegations in detail, including reference to statements by the defendant and specific electronic

---

[4]      "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'"  Counterman v. Colorado, 600 U.S. 66, 74 (2023) (quoting Virginia v. Black, 538 U.S. 343, 359 (2003)).

16

communications. These factual allegations are supplemented by the ample "discovery produced by the government in this case," including the names of victims and relevant recordings, removing any doubt regarding fair notice. United States v. Ragano, 740 F. Supp. 3d 179, 184 (E.D.N.Y. 2024). No additional detail is necessary in the Indictment.

The defendant cites no case law demonstrating that § 2261A is one of the "very rare" statutes for which "specification of how [any] particular element" is met is "of such importance to the fairness of the proceeding that it must be spelled out in the indictment." United States v. Ji, No. 21-CR-265 (PKC), 2022 WL 595259, at *8 (E.D.N.Y. Feb. 28, 2022) (quoting Stringer, 730 F.3d at 125-26). The defendant identifies no category of facts that are "frequently uncertain but invariably 'central to every prosecution'" for § 2261A. United States v. Resendiz-Ponce, 549 U.S. 102, 109 (2007) (emphasis added) (quoting Russell v. United States, 369 U.S. 749, 764 (1962)). An indictment typically need not identify "the particulars of how a defendant effectuated the crime."[5] United States v. Helbrans, 547 F. Supp. 3d 409, 424 (S.D.N.Y. 2021) (cited in Br. 18).

The defendant's argument, at bottom, amounts to a "premature sufficiency of the evidence" argument that lacks merit. United States v. Valdez, No. 20-CR-115 (ALC), 2021 WL 1317548, at *5 (S.D.N.Y. Apr. 9, 2021); accord United States v. Cooper, No. 17-CR-296 (PKC),

---

[5] In particular, and contrary to what the defendant suggests, the Indictment need not identify the acts constituting the "course of conduct," because § 2261A does "not contain a requirement that the two or more acts making up the 'course of conduct' be illegal" and the acts "do not constitute elements," United States v. Lubienecki, No. 20-CR-77 (RJA), 2020 WL 7248323, at *3 (W.D.N.Y. Oct. 20, 2020), report and recommendation adopted, No. 20-CR-77 (RJA), 2020 WL 7239872 (W.D.N.Y. Dec. 9, 2020); see also United States v. Smith, No. 22-CR-51 (MWM), 2024 WL 3721692, at *7 (D. Nev. Aug. 8, 2024) ("[B]oth criminal and noncriminal acts can combine to establish a course of conduct. . . . I am not imposing a requirement that the course of conduct consist of at least two criminalizable acts . . . .").

2020 WL 2307646, at *3 (E.D.N.Y. May 8, 2020).  Because the Indictment here is valid on its

face, the government is "entitled to present" its case "without any pre-trial determination" as to

the "sufficiency" of its proof, and the defendants' interest in challenging that proof is fully

vindicated by trial and post-conviction litigation.  <u>Aiyer</u>, 33 F.4th at 116-17, 120-23.

<b>b.</b>      <u>Counts Four and Five Do Not Allege Attempts</u>

The defendant's first challenge to 18 U.S.C. § 2261A fundamentally misconstrues

the elements of the statute.  The defendant incorrectly asserts that the first element of both the

cyberstalking and interstate stalking charges is the commission of a "course of conduct."  This

argument conflates the text of different statutes and, in doing so, arrives at an incorrect

interpretation of this first element that conflicts with the case law.

As an initial matter, the travel stalking provision—18 U.S.C. § 2261A(1)—and

the cyberstalking provision—18 U.S.C. § 2261A(2)—have materially different language and

elements.  Although the defendant attempts to advance his challenge to both Counts Four and

Five, only the cyberstalking provision makes any reference to a "course of conduct."  <u>See</u> <u>United</u>

<u>States v. Gross</u>, 23 F.4th 1048, 1053 (8th Cir. 2022) ("Only cyberstalking includes a 'course of

conduct' requirement.").[6]  Indeed, in <u>United States v. McMahon</u>, No. 21-CR-265 (PKC)

---

[6]      "The fact that Congress uses different language in defining violations in a statute
indicates that Congress intentionally sought to create distinct offenses."  <u>United States v.
Piervinanzi</u>, 23 F.3d 670, 680 (2d Cir. 1994).  Congress has included the term "course of
conduct" in the cyberstalking provision since its enactment in 2000.  <u>See</u> Pub. L. No. 106-386,
114 Stat. 1464, 1498 (2000) (codified as amended in 18 U.S.C. § 2261A(2)).  At the time, the
travel stalking provision did not use the term "conduct."  Pub. L. No. 106-386, 114 Stat. 1464,
1498 (2000) (codified as amended in 18 U.S.C. § 2261A(1)).  Congress amended the travel
stalking provision in 2013 to include the term "conduct," not "course of conduct."  Pub. L. No.
113-4, 127 Stat. 54, 77-78 (2013) (codified as amended in 18 U.S.C. § 2261A(1)).  The omission
"speaks volumes" because the cyberstalking provision "preceded and presumably provided the
framework" for the amended travel stalking provision.  <u>United States v. Shabani</u>, 513 U.S. 10, 14
(1994).

18

(E.D.N.Y.), the Honorable Pamela K. Chen, United States District Judge, declined to instruct on the meaning of "course of conduct" where the trial involved only an interstate stalking count. See Jury Inst. 37-39, United States v. McMahon, No. 21-CR-265 (PKC) (E.D.N.Y.), ECF No. 256 at 41-43.  And in United States v. Nagel, No. 10-CR-511 (JBW) (E.D.N.Y.), the Honorable Jack B. Weinstein, United States District Judge, instructed on the meaning of "course of conduct" only as to the cyberstalking count, not as to the interstate stalking count.  Compare Trial Tr. 690-91 (cyberstalking), United States v. Nagel, No. 10-CR-511 (JBW) (E.D.N.Y.), ECF No. 60 at 57-58, with id. at 687-88 (interstate stalking), ECF No. 60 at 54-55.

Thus, the elements of the travel stalking crime charged in Count Five are: (1) the defendant traveled in interstate commerce; (2) the defendant traveled with the intent to harass or intimidate—or with the intent to place under surveillance with the intent to harass or intimidate—a victim; and (3) in the course of, or as a result of, such travel, the defendant engaged in conduct that attempted to cause, or would reasonably be expected to cause, substantial emotional distress to the victim, the victim's spouse or intimate partner, or the victim's immediate family member.  See 18 U.S.C. § 2261A(1); Hon. Leonard B. Sand et al., Modern Federal Jury Instructions, Inst. 63-15; Jury Inst. 37-39, United States v. McMahon, No. 21-CR-265 (PKC) (E.D.N.Y.), ECF No. 256 at 43-44; Trial Tr. 687-88, United States v. Nagel, No. 10-CR-511 (JBW) (E.D.N.Y.), ECF No. 60 at 54-55.  The elements of the cyberstalking crime charged in Count Four are: (1) the defendant used a facility of interstate commerce to

engage in a course of conduct;[7] (2) the defendant used the facility of interstate commerce with the intent to harass or intimidate—or with the intent to place under surveillance with the intent to harass or intimidate—a victim; and (3) the course of conduct attempted to cause, or would be reasonably expected to cause, substantial emotional distress to the victim, the victim's spouse or intimate partner, or the victim's immediate family member.  See 18 U.S.C. § 2261A(2); Trial Tr. 690-91, United States v. Nagel, No. 10-CR-511 (JBW) (E.D.N.Y.), ECF No. 60 at 57-58; United States v. Jordan, 591 F. Supp. 2d 686, 721-22 (S.D.N.Y. 2008), aff'd, 639 F. App'x 768 (2d Cir. 2016); see also Fleury, 20 F.4th at 1370-71; United States v. Shrader, 675 F.3d 300, 309-10 (4th Cir. 2012).

The elements of Counts Four and Five make clear that the actus reus of the crime is satisfied by "interstate travel" or the "use" of an interstate facility.  See 18 U.S.C. § 2261A ("Whoever—(1) travels . . . or (2) . . . uses . . . any . . . facility of interstate or foreign commerce . . . .").  Furthermore, to the extent that the government is required to demonstrate a

_____

[7]      This formulation makes clear that the defendant need use a facility only once as part of the course of conduct.  Cf. Gross, 23 F.4th at 1053 (rejecting defense argument, in travel stalking case, that government could not secure conviction based on "only one instance of harassment").  Congress defined "course of conduct" as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."  18 U.S.C. § 2266(2) (emphasis added).  Congress did not include the term "uses."  Thus, a "single use of a facility of interstate commerce to engage in a course of conduct . . . is sufficient."  Shrader v. United States, No. 09-CR-270 (ICB), 2015 WL 13745348, at *15 (S.D.W. Va. July 24, 2015), report and recommendation adopted, No. 09-CR-270 (ICB), 2016 WL 299036 (S.D.W. Va. Jan. 25, 2016), appeal dismissed, 668 F. App'x 494 (4th Cir. 2016); accord United States v. Shrader, No. 09-CR-270 (ICB), 2010 WL 2425900, at *4 (S.D.W. Va. June 10, 2010) ("[T]he 'course of conduct' element does not necessitate two or more uses of interstate facilities. . . .  [I]f Congress intended as such, it would have explicitly written [that] theory into the statutory language."), aff'd, 675 F.3d 300 (4th Cir. 2012).  Or as another district court put it, the provision's "plain language" does not "require that each of the '2 or more acts' constituting a 'course of conduct' involve use of a facility of interstate commerce."  United States v. Elkins, 725 F. Supp. 3d 570, 574 (N.D. Tex. 2024), vacated in part on other grounds, 161 F.4th 899 (5th Cir. 2025), petition for cert. filed, No. 25-1061 (U.S. filed Mar. 4, 2026).

20

"course of conduct" as to Count Four, case law makes clear that a "range of acts can satisfy this element, including non-violent acts such as driving to a particular place or placing a telephone call." United States v. Mangione, 818 F. Supp. 3d 509, 526 (S.D.N.Y. 2026). Because—as set forth in detail in the Complaint, the Indictment, other court filings, and the discovery record—the defendant is alleged, among other things, to have traveled, used interstate facilities, and undertaken many other acts that would constitute "conduct" or a "course of conduct" that attempted to cause or would reasonably be expected to cause harm to his victims, the defendant's arguments fail.

c.      The Defendant Misreads *Dennis*

The defendant's second statutory argument—that Dennis requires that Counts Four and Five involve "true threats"—also fails on the merits. The defendant's argument is focused primarily on the cyberstalking statute charged in Count Four and contends only in a footnote that Dennis should apply to the interstate stalking provision. (See Br. 22 n.5.) The reason the defendant's argument is cabined to a footnote is obvious; there is no authority to support this argument, and no federal court has suggested that a statute proscribing travel is limited to threatening communications.

As for the cyberstalking offense, the defendant misreads Dennis. The government in Dennis pursued a cyberstalking case based solely on the content of "abusive electronic communications" sent by the defendant directly to multiple victims, and the parties agreed that the prosecution required that the jury find that the communications conveyed and were intended to convey true threats. Dennis, 132 F.4th at 221, 235-37; see also id. at 229 n.6 (noting that "the parties here focus on the government's proof of 'true threats'"). Under those circumstances, the Second Circuit held that the nature of the communications at issue could not support a finding, as

21

to one victim, that the communications conveyed or were intended to convey the physical harm required for a true threat.  See id. at 235-37.

This prosecution, however, is not limited to true threats.  The government expects that the proof at trial will demonstrate that the defendant intended, among other things, that the CW surveil, harass, and intimidate the victims in this case.  The defendant cites no authority holding that the only way to sustain a § 2261A(2)(B) conviction is in the context of true threats, and the government is not aware of any.  Instead, a jury need not be charged about the elements of a true threat "in a case that included," for instance, "non-expressive acts."  Mangione, 818 F. Supp. 3d at 529 n.13.  This Court should reject the defendant's unsupported request to narrow the scope of § 2261A before a jury hears all the evidence.

### 2. The Constitutional Arguments Are Unripe and Lack Merit

The defendant also raises constitutional objections to Counts Four and Five.  The defendant raises facial and as-applied First Amendment and Fifth Amendment claims against only a portion of the statute.  Included in the travel stalking and cyberstalking provisions, the portion identifies one of the alternative means of demonstrating the defendant's mens rea: "the intent to . . . place under surveillance with intent to . . . harass[] or intimidate another person" (the "'place under surveillance' intent prong").[8]  18 U.S.C. § 2261A(1), (2).  Because the defendant's challenges are premature and meritless, this Court should deny the motion.

---

[8]  Congress initially enacted § 2261A to address "cases in which the victim was unrelated to their stalker."  Bandy, 2021 WL 876980, at *4.  In 2006, Congress amended the statute to include the "place under surveillance" language in the travel stalking and cyberstalking provisions.  See Pub. L. No. 109-162, 119 Stat. 2960, 2987-88 (2006) (codified as amended in 18 U.S.C. § 2261A(1), (2)).  In enacting the change, Congress clarified that it wanted to broaden the scope of the statute to, among other things, situations without direct confrontation by the stalker or his confederates and the victim, where the victim is being closely observed or watched.

The defendant does not raise a traditional facial challenge that the "place under surveillance" intent prong is "unconstitutional in every conceivable application," which is foreclosed by the case law.  Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984); see also United States v. Ackell, 907 F.3d 67, 75 (1st Cir. 2018) ("We begin by stating the obvious: § 2261A(2)(B) is not a statute that is valid under 'no set of circumstances.'" (quoting United States v. Stevens, 559 U.S. 460, 472 (2010))).  Instead, the defendant raises an overbreadth challenge.  This challenge also fails.

"The First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges."  Virginia v. Hicks, 539 U.S. 113, 118 (2003). An overbreadth challenge is "disfavored."  Moody v. NetChoice, LLC, 603 U.S. 707, 723, 744 (2024).  "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)."  Hicks, 539 U.S. at 124.

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."  United States v. Williams, 553 U.S. 285, 293 (2008).  "What activities, by what actors, do[es] the law[] prohibit or otherwise regulate?"  NetChoice, 603 U.S. at 724.  The Court then turns to whether the statute, as construed, "criminalizes a substantial amount of protected expressive activity."  Williams, 553 U.S. at 297.  The "law's application to protected speech [must] be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications."  Hicks, 539 U.S. at 119-20 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)).  The "unconstitutional applications" must "substantially outweigh" the "constitutional ones."  NetChoice, 603 U.S. at 724; United States v. Hansen, 599 U.S. 762,

784 (2023) (requiring "ratio of unlawful-to-lawful applications" to be "lopsided enough" to "justify" application of overbreadth doctrine). The defendant bears the burden of demonstrating "substantial overbreadth" from both statutory text and "actual fact." Hicks, 539 U.S. at 122 (quoting N.Y.S. Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 14 (1988)).

Furthermore, facial challenges address remedy and do not "speak at all to the substantive rule of law necessary to establish a constitutional violation." Bucklew v. Precythe, 587 U.S. 119, 138 (2019). No overbreadth challenge may succeed where the speech at issue "enjoy[s] no First Amendment protection." United States v. Greenberg, No. 21-CR-92 (AJN), 2022 WL 827304, at *23 (S.D.N.Y. Mar. 9, 2022) (Nathan, J.) (citation omitted).

Separately, "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." Williams, 553 U.S. at 304. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Id. In the First Amendment context, a defendant may raise a facial vagueness challenge "only if the challenged [law] 'reaches a substantial amount of constitutionally protected conduct.'" Farrell v. Burke, 449 F.3d 470, 496 (2d Cir. 2006) (Sotomayor, J.) (quoting Kolender v. Lawson, 461 U.S. 352, 358 n.8 (1983)). The Court determines whether the law "will have a substantial chilling effect on protected conduct." Id. at 497.

"Condemned to the use of words, [federal courts] can never expect mathematical certainty with [statutory] language." Grayned v. City of Rockford, 408 U.S. 104, 110 (1972) (rejecting vagueness challenge implicating First Amendment concerns). Statutory terms may have "flexibility and reasonable breadth, rather than meticulous specificity," Commack Self-

Service Kosher Meats, Inc. v. Hooker, 680 F.3d 194, 213 (2d Cir. 2012) (quoting Grayned, 408 U.S. at 110), and "some inherent vagueness" is inevitable and thus permissible, Rose v. Locke, 423 U.S. 48, 49-50 (1975); see also Williams, 553 U.S. at 304 ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989))).

### b. The As-Applied Challenges Are Unripe

The Court may easily dispose of the as-applied challenges at this juncture. The as-applied First Amendment challenge (see Br. 29-30) is unripe. The issue is fact-intensive, and "federal law provides no mechanism for resolving such factual issues short of trial." United States v. Lewis, 682 F. Supp. 3d 1038, 1042 (S.D. Ala. 2023); accord, e.g., United States v. Vangdy, No. 23-CR-10027 (JWB), 2024 WL 3291743, at *1 (D. Kan. July 3, 2024); United States v. Christianson, No. 19-CR-140 (PPS), 2021 WL 1750085, at *1 (N.D. Ind. May 4, 2021). Rule 12(b)(1) precludes determination at this juncture because the resolution of "contested facts surrounding the commission of the offense" would assist the Court in assessing the constitutional claim. Pope, 613 F.3d at 1259. The defendant appears to concede this point. (See Br. 29 ("The required analysis, however, is not possible at this time.").)

Furthermore, although the defendant raises a Fifth Amendment vagueness challenge to the "place under surveillance" intent prong, he does not make clear whether he makes it as a facial matter or as applied to his case. (See Br. 22-26.) To the extent he raises a facial challenge, because its availability "sometimes depends upon whether the challenged regulation was constitutional as applied to the" defendant, this Court "should" first examine his

"conduct before analyzing other hypothetical applications of the law."[9] <u>Farrell</u>, 449 F.3d at 485 (quoting <u>Hoffman Estates</u>, 455 U.S. at 495); <u>see also</u> <u>Farhane</u>, 634 F.3d at 138 n.9 (observing same "preference" in First Amendment context).  But the facts at issue are contested, and thus this Court may not assess the as-applied vagueness challenge until after trial.  Accordingly, the Court should deny as premature the as-applied constitutional challenge, as well as the as-applied and (to the extent asserted) facial vagueness challenges.

c. <u>The Facial Overbreadth Challenge Lacks Merit</u>

The defendant's facial overbreadth challenge lacks merit for numerous reasons. As an initial matter, the statute "regulates conduct, not content," and federal courts frequently reject First Amendment challenges to § 2261A on the basis that the statute regulates conduct. <u>Bandy</u>, 2021 WL 876980, at *4 (collecting cases).  Federal courts have pointed to numerous examples of "unprotected conduct covered" under the statute:

> a defendant could send envelopes of unknown white powder to the victim in the mail; he could send the victim nude photographs of herself; he could repeatedly infect the victim's computers with viruses; he could open unwanted on-line dating profiles under the victim's identity; he could take out unwanted loans in the victim's name; or he could arrange every day for deliveries to be made at the victim's home at all hours of the night.

<u>Fleury</u>, 20 F.4th at 1363 (quoting <u>Ackell</u>, 907 F.3d at 73).  And the Second Circuit has held that an analogous state statute "regulates conduct, not mere speech."  <u>Gormley v. Dir., Conn. State Dep't of Probation</u>, 632 F.2d 938, 941-42 (2d Cir. 1980); <u>see also</u> <u>id.</u> at 942 ("Whether speech

---

[9] Outside the First Amendment context, federal courts "generally view vagueness challenges as applied to the defendant's case," not as a facial matter, and are, in fact, instructed to "examine the complainant's conduct" first after a criminal conviction. <u>United States v. Farhane</u>, 634 F.3d 127, 138-39 (2d Cir. 2011) (quoting <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 495 (1982)).

26

actually occurs is irrelevant, since the statute proscribes conduct, whether or not a conversation actually ensues.”).

The defendant does not explain how the means of proving <u>mens rea</u>, such as the “place under surveillance” intent prong, alter the analysis.  Nonetheless, even in isolation, the statutory phrase “place under surveillance” predominantly covers conduct.  A review of dictionaries shows that they agree on an ordinary meaning for the phrase “place under surveillance”: causing a victim to be closely watched or observed.[10]  The defendant suggests that the word “surveillance” has a legal definition (<u>see</u> Br. 24 (citing Black’s Law Dictionary)), but the phrase is not “obviously transplanted from another legal source,” <u>Sekhar v. United States</u>, 570 U.S. 729, 733 (2013) (citation omitted).  Under the phrase’s plain meaning and relevant case law, contemplated conduct includes electronic tracking, status reports of a target’s location, and research about a target’s home address.  <u>See, e.g.</u>, <u>United States v. McMahon</u>, No. 21-CR-265

---

[10]  <u>Surveillance</u>, The American Heritage Dictionary (5th ed. 2022) (“1. Close observation of a person or group, especially one under suspicion[;] 2. The act of observing or the condition of being observed.”), https://www.ahdictionary.com/word/search.html?q=surveillance (last visited July 15, 2026); <u>Surveillance</u>, New Oxford American Dictionary (3d ed. 2015) (“close observation, especially of a suspected spy or criminal”); <u>Surveillance</u>, The Oxford English Dictionary (2d ed. 1989) (“Watch or guard kept over a person, etc., esp. over a suspected person, a prisoner, or the like; often, spying, supervision; less, commonly, supervision for the purpose of direction or control, superintendence.”); <u>Surveillance</u>, Merriam-Webster.com (“close watch kept over someone or something (as by a detective)”), https://www.merriam-webster.com/dictionary/surveillance (last visited July 15, 2026); <u>Place</u>, The American Heritage Dictionary (5th ed. 2022) (“5. To put into a particular condition: [‘]placed him under arrest.[’]”), https://www.ahdictionary.com/word/search.html?q=place (last visited July 15, 2026); <u>Place</u>, New Oxford American Dictionary (3d ed. 2015) (“cause to be in a particular situation: [‘]enemy officers were placed under arrest[’] | [‘]you are not placing yourself under any obligation[’]”); <u>Place</u>, The Oxford English Dictionary (2d ed. 1989) (“To put or set in a particular place, position, or situation; to station; to post; <u>fig.</u> to set in some condition, or relation to other things.”); <u>Place</u>, Merriam-Webster.com (“to put in a particular state[;] [‘]place a performer under contract[’]”), https://www.merriam-webster.com/dictionary/place (last visited July 15, 2026).

27

(PKC), 2024 WL 896838, at *15 & n.20 (E.D.N.Y. Mar. 1, 2024); United States v. Curley, No. 08-CR-404 (SCR), 2009 WL 10688209, at *2 (S.D.N.Y. July 15, 2009).

The defendant points out that photography and videorecording may be used to place a target under surveillance. See also McMahon, 2024 WL 896838, at *15 & n.20 (discussing pictures of target's movements). He identifies case law discussing the First Amendment value of recording. (See Br. 27-28 (first citing Fields v. City of Philadelphia, 862 F.3d 353, 355-56, 359 (3d Cir. 2017), and then citing ACLU v. Alvarez, 679 F.3d 583 (7th Cir. 2012)).) But the cases are inapposite. Those Courts of Appeals have recognized a "First Amendment right to record police activity in public"—a right deriving from the "public's right of access to information about their officials' public activities." Fields, 862 F.3d at 355-56, 359; accord Alvarez, 679 F.3d at 600. As this Court has correctly observed, "neither" case is "binding," and "neither the Supreme Court nor the Second Circuit" has recognized the right. Birch Family Servs., Inc. v. Wlody, No. 19-CV-3301 (DLI), 2021 WL 2312852, at *9 (E.D.N.Y. June 7, 2021), aff'd, No. 21-1553, 2022 WL 1468160 (2d Cir. May 10, 2022). This Court further distinguished the cases on the grounds that the targets in Birch Family were private individuals, and that the surveillance was "threatening and intimidating." Id. Here, the Indictment alleges that the defendant intended surveillance "with the intent to harass and intimidate." (Ind. ¶¶ 4-5.)

Furthermore, the defendant's recordings are likely "integral to criminal conduct in intentionally harassing, intimidating or causing substantial emotional distress." Russell v. United States, No. 20-CR-427 (AMD), 2025 WL 552588, at *6 (E.D.N.Y. Feb. 19, 2025) (quoting United States v. Sergentakis, No. 15-CR-33 (NSR), 2015 WL 3763988, at *7 (S.D.N.Y. June 15, 2015)), appeal dismissed, No. 25-968 (2d Cir. May 20, 2025). Any expressive activity furthering

an extortion scheme also is unprotected.  See United States v. Petrovic, 701 F.3d 849, 855 & n.3 (8th Cir. 2012) (predecessor to § 2261A(2)(B)); accord United States v. Hobgood, 868 F.3d 744, 748 (8th Cir. 2017); United States v. Sayer, 748 F.3d 425, 434-34 (1st Cir. 2014); see also, e.g., Gresham v. Peterson, 225 F.3d 899, 909 (7th Cir. 2000) ("Numerous cases hold that governments may proscribe threats, extortion, blackmail and the like, 'despite the fact that they criminalize utterances because of their expressive content.'" (citation omitted)).  And even if some protected expressive activity were covered, the particular prosecution would be subject to at most intermediate scrutiny.  See, e.g., Nicodemus v. City of South Bend, Ind., 137 F.4th 654, 664-66 (7th Cir. 2025); Project Veritas v. Schmidt, 125 F.4th 929, 960-61 (9th Cir. 2025) (en banc).  Any such prosecution is "narrowly tailored" to vindicate the "substantial government interest in ensuring that private victims are not targeted with harassing and intimidating electronic communications that are reasonably expected to cause substantial emotional distress." Bandy, 2021 WL 876980, at *4-5.  Finally, unconstitutional applications may be remedied through as-applied litigation after a jury has decided the facts.  See, e.g., Ackell, 907 F.3d at 77; Petrovic, 701 F.3d at 856.  Therefore, the Court should reject the facial overbreadth challenge.

    d.  To the Extent Raised, the Facial Vagueness Challenge Is Unripe and Lacks Merit

    As noted above, the Court "should" postpone decision on any facial vagueness challenge.  Farrell, 449 F.3d at 485 (quoting Hoffman Estates, 455 U.S. at 495); accord Farhane, 634 F.3d at 138 n.9.  Still, the Court also may deny the motion now because the facial claim fails on the merits.  Vagueness challenges concern the "adequate of notice to the complaint that his conduct is proscribed."  Hoffman Estates, 455 U.S. at 499.  They do not concern the mens rea element by itself.  Indeed, federal courts have understood the proof of an intent to "place under surveillance" as a means of "vitiat[ing] the vagueness concerns" regarding § 2261A.  E.g.,

29

United States v. Shrader, No. 09-CR-270 (ICB), 2010 WL 2179570, at *3 (S.D.W. Va. May 26, 2010), aff'd, 675 F.3d 300 (4th Cir. 2012).  The defendant here does not raise vagueness challenges to the actus rei elements.  Thus, this Court may summarily reject the challenge.

In any event, federal courts have rejected vagueness challenges to the meaning of the phrase "place under surveillance."  See, e.g., United States v. Thornton, No. 21-CR-878 (KJG), 2021 WL 5578902, at *2 (D.N.M. Nov. 29, 2021); United States v. Oury, No. 19-CR-80 (RSB), 2019 WL 8440692, at *3 (S.D. Ga. Dec. 10, 2019), report and recommendation adopted, No. 19-CR-80 (RSB), 2020 WL 555377 (S.D. Ga. Feb. 4, 2020).  The phrase "place under surveillance" carries a plain meaning that is easily understood, and the term does not cover substantial amounts of protected First Amendment activity.  The phrase also cannot be unconstitutionally vague when terms of similar or greater breadth in the same statute have already survived vagueness challenges.  The meaning of words like "harass" and "intimidate" "can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning."  Bowker, 372 F.3d at 382 (quoting Staley v. Jones, 239 F.3d 769, 791-92 (6th Cir. 2001)).  The statutory structure further limits the language's scope to intended conduct undertaken with an additional and specific harmful intent.  The phrase "place under surveillance with intent to kill, injure, harass, or intimidate" is even less vague than the phrase "place under surveillance," particularly when federal courts have upheld Congress' use of terms like "harass."

Therefore, to the extent the defendant has raised it, the facial vagueness challenge to the "place under surveillance" intent prong fails.

e.      The Challenges to the State Statutes Are Unripe and Lack Merit

Finally, the defendant in a footnote makes a cursory constitutional challenge to N.Y. Penal Law §§ 135.60 and 155.05(e)(2).  (See Br. 34 n.10.)  The argument is a premature

30

sufficiency objection, which is unavailable at this stage. In any event, the argument fails on the

merits. Contrary to what the defendant asserts, New York courts have rejected First Amendment

challenges to N.Y. Penal Law §§ 135.60 and 155.05(e)(2), see, e.g., United States v. Larson, 807

F. Supp. 2d 142, 163-66 (W.D.N.Y. 2011); United States v. Jackson, 986 F. Supp. 829, 832-37

(S.D.N.Y. 1997), aff'd on reh'g, 196 F.3d 383 (2d Cir. 1999); Bishop v. Golden, 302 F. Supp.

502, 505 (E.D.N.Y. 1969); People v. Feldman, 791 N.Y.S.2d 361, 379-83 (Kings Cty. Sup. Ct.

2005); see also Jackson, 986 F. Supp. at 833-34 (explicitly distinguishing three out-of-circuit

cases cited by this defendant); Feldman, 791 N.Y.S.2d at 383 n.15 (same, for one case). The

statutes "have withstood constitutional challenges which claimed that they impermissibly

regulated speech, were vague, and were overbroad."[11] William C. Donnino, Practice

Commentary, McKinney's Consolidated Laws of New York, N.Y. Penal Law § 135.60. Thus,

the Court should reject the defendant's cursory attack on multiple state-law provisions.

II.      The Defendant Is Not Entitled to a Bill of Particulars

The defendant also contends that the Indictment provides insufficient detail for

him to prepare his defense and that a bill of particulars is necessary. The generic reasons he

proffers do not meet that standard of necessity. In any event, the Indictment, together with

documents in the record, including the Complaint and the government's filings and discovery

---

[11]      Notably, numerous New York courts have endorsed prosecutions based on these
state statutes (as well as Travel Act violations based on these state-law predicates). See, e.g.,
United States v. Jackson, 196 F.3d 383, 384, 389 (2d Cir. 1999); United States v. Brecht, 540 F.2d
45, 50 n.10 (2d Cir. 1976), overruled on other grounds by Perrin v. United States, 444 U.S. 37
(1979); Larson, 807 F. Supp. 2d at 160-62, aff'd in relevant part sub nom. United States v. Kirsch,
903 F.3d 213 (2d Cir. 2018); People v. Anatriello, 77 N.Y.S.3d 581, 584-85 (3d Dep't 2018);
People v. Caban, 696 N.Y.S.2d 1, 2-3 (1st Dep't 1999); People v. Discala, 397 N.Y.S.2d 852, 854
(1st Dep't 1977); People v. Rackett, No. 2010NA030362, 2011 WL 6445226, at *4-6 (Nassau Cty.
Dist. Ct. Dec. 21, 2011); People v. Graves, 820 N.Y.S.2d 476, 477 (N.Y. Cty. Crim. Ct. 2006);
Feldman, 791 N.Y.S.2d at 375-79.

productions, provide ample notice of the government's theory. A bill of particulars is not

necessary, and the Court should deny this request.

A. Legal Standard

The pleading standard under Rule 7(c) is discussed at length above. Additional

details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f), are appropriate only when

the indictment is too vague to inform the defendant of the nature of the charges to allow the

preparation of a defense, avoid unfair surprise, and assert a double jeopardy claim. See United

States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Feola, 651 F. Supp.

1068, 1132 (S.D.N.Y. 1987) ("A bill of particulars should be required only where the charges of

the indictment are so general that they do not advise the defendant of the specific acts of which

he is accused." (collecting cases)), aff'd, 875 F.2d 857 (2d Cir. 1989). If the information sought

by the defendant is provided in the indictment or through some other means, a bill of particulars

is not warranted. See Bortnovsky, 820 F.2d at 574. "The defendant bears the burden of showing

'the information sought is necessary,' and that he will be prejudiced without it." United States v.

Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016) (quoting

United States v. Fruchter, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000)); United States v. Rivera,

No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011) ("The ultimate test in

determining whether a bill of particulars is appropriate is whether the information is necessary,

not whether it is helpful to the defendant." (emphasis added) (quoting United States v. Wilson,

493 F. Supp. 2d 364, 370 (E.D.N.Y. 2006))).

A defendant cannot use a bill of particulars as an investigative tool or as a pretrial

discovery device. See United States v. Pimentel, No. 99-CR-1104 (SJ), 2001 WL 185053, at *4

(E.D.N.Y. Jan. 22, 2001). Rule 7(f) also may not be used to limit the evidence at trial, or to flush

out the government's prosecutorial theories or methods of proof in advance of trial.  See Shkreli,

2016 WL 8711065, at *4 (collecting cases); see also United States v. Sattar, 314 F. Supp. 2d 279,

318 (S.D.N.Y. 2004) ("The Government may not be compelled to provide a bill of particulars

disclosing the manner in which it will attempt to prove the charges, the precise manner in which

the defendant committed the crimes charged, or a preview of the Government's evidence or legal

theories.").  Accordingly, "courts have routinely held that the 'wheres, whens and with whoms'

of a charged offense are beyond the proper scope of a bill of particulars."  United States v.

Shteyman, No. 10-CR-347 (SJ), 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011) (quoting

Rivera, 2011 WL 1429125, at *8); see also United States v. Trippe, 171 F. Supp. 2d 230, 240

(S.D.N.Y. 2001) ("[D]emands for particular information with respect to where, when, and with

whom the Government will charge the defendant with conspiring are routinely denied."

(collecting cases)).  The decision to grant or deny a bill of particulars is committed to this

Court's discretion.  See Fruchter, 104 F. Supp. 2d at 311.

> B.      Discussion

The defendant's request that the government "identify [by] what actions" the

defendant committed the charged crimes, Br. at 39, is in fact a request that the Court compel the

government to disclose before trial the "the precise manner in which the defendant[s] committed

the crimes charged."  Sattar, 314 F. Supp. 2d at 318 (denying request for bill of particulars).

Contrary to defendant's assertions, "the Government has provided substantial discovery" and

"outlined its theory and the facts upon which it is based in numerous filings with the court,"

United States v. Pugh, No. 15-CR-116 (NGG), 2015 WL 9450598, at *28 (E.D.N.Y. Dec. 21,

2015) (collecting cases), including in the Complaint and its bail letter, see Bortnovsky, 820 F.2d

at 574 ("[I]f the information sought by defendant is provided in the indictment or in some

acceptable alternate form, no bill of particulars is required."). In light of these detailed filings, the defendant's request is baseless. Recently, in Ragano, the Honorable Hector Gonzalez, United States District Judge, denied a defendant's motion for a bill of particulars in an extortion case where the defendant argued that "he was entitled to know what specific acts the government is relying on to form the basis of the harassment alleged in the Indictment." 740 F. Supp. 3d at 185-86. Judge Gonzalez denied the motion, finding that the indictment identified tracked the charges with sufficient particularity and observing that the government provided the defendant with, among other things, recordings, transcripts, text messages, and toll records. Id. at 186; see also United States v. Rittweger, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003) (denying bill of particulars request—where defendant was charged with multiple Travel Act counts—as "impermissible attempt to compel the Government to provide the evidentiary details of its case" (quoting United States v. Biaggi, 675 F. Supp. 790, 810 (S.D.N.Y. 1987))).

Further, the case law upon which the defendant relies does not support his request for a bill of particulars. The differences between the instant Indictment and that in United States v. Gullett, 713 F.2d 1203 (6th Cir. 1983) (cited in Br. 40), are stark and demonstrate the weakness of the defendant's argument. In Gullett, the Sixth Circuit observed merely that the Travel Act charges in the indictment at issue alleged travel on "overlapping dates," and that the "variance in the two time periods was remedied by the government's bill of particulars, which revised the travel period in [C]ount [E]ight." Id. at 1212. Here, in contrast, the government has properly alleged the defendant's travel in Counts Three and Six. The dates do not overlap and no revision, whether by bill of particulars or otherwise, is necessary. Similarly, the issue in United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988) (cited in Br. 40), concerned the government's obligation to provide notice of uncharged racketeering acts the government intended to prove in

34

a racketeering case, id. at 1152. At trial, the government introduced evidence of extortions against three victims that were not identified anywhere in the indictment and were not among the four separately charged extortions. The Second Circuit determined that the district court erred in denying the request for a bill of particulars only as to the identity of victims of the uncharged extortion schemes the government sought to prove at trial. Id. at 1154. Unlike in Davidoff, the government here has identified the extortion scheme and the John Doe and Jane Doe victims in the Indictment. Davidoff requires no more.

For all of these reasons, the defendant's request for a bill of particulars should be denied.

III.     The Defendant Is Not Entitled to Additional Discovery Disclosures

The defendant seeks to compel disclosure of several categories of materials to which he claims he is entitled under Rule 16 and Brady v. Maryland, 373 U.S. 83 (1963). As the Court is aware, the government's proof at trial in this case includes recorded conversations between the defendant and the CW. On two dates in January 2026, one of the recording devices (the "Device") used by federal agents and the CW in this case did not operate as intended— whether due to equipment malfunction or human error—and failed to generate recordings.

The government has provided the defendant with specific information and materials regarding the Device's operation failures. Specifically, the government has disclosed, among other things, a copy of a report prepared by a member of the FBI's Computer Analysis Response Team ("CART") summarizing CART's attempts to retrieve data from the Device, as well as a copy of a report prepared by Adaptive Digital Services, Inc. ("ADS"), the device's manufacturer, summarizing tests performed by ADS on the Device. In addition, though not mandated by any rule governing its disclosures, the government has recently provided additional

details pertaining to various attempts by the FBI and ADS to retrieve recordings from the Device, including identification of potential human errors or equipment malfunctions in connection with the Device.

The defendant seeks to compel disclosure of, among other things, the following materials related to the Device: "file logs, or screen shots of the same"; all "FD-302 and FD-1023 reports documenting the investigative activities of FBI agents and debriefings of the cooperating witness"; "communications by FBI agents, federal prosecutors and/or other federal law enforcement officers"; "inserts to federal law enforcement and FBI reports"; "handwritten agent notes by FBI or other law enforcement officers"; and "chains of custody of electronic evidence recovered or attempted to be recovered from consensual recording operations." (Br. 43-44.)

As an initial matter, the government recognizes and takes seriously its obligations under Brady, Giglio v. United States, 405 U.S. 150 (1972), and their progeny, and the government will continue to comply with those obligations. Indeed, the government has already surpassed its disclosure obligations with regard to the Device by providing certain voluntary disclosures of information to the defendant, both orally and in writing—including summaries of witness statements pertaining to the above-described efforts to examine and extract data from the Device. "The courts of this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where the Government" has made, as here, "good faith representations to the court and to defense counsel that it recognizes its disclosure obligations under Brady, and that it has complied with said obligations and will continue to do so in a timely manner." Shkreli, 2016 WL 8711065, at *2 (collecting cases).

The defendant is not correct that law enforcement reports, communications, and handwritten notes "explaining how and why the recording device did not record" are "discoverable under Rule 16." (Br. 44 (citing Fed. R. Crim. P. 16(a)(1)(E)(i)).) To the extent such materials exist, they are specifically and clearly exempted from the discovery obligations otherwise set forth in Rule 16(a)(1). In particular, Rule 16(a)(2) provides that Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2); see also, e.g., United States v. Lambus, No. 15-CR-382 (JBW), 2016 WL 4536867, at *2 (E.D.N.Y. Aug. 30, 2016) ("Rule 16(a)(2) protects from disclosure emails, notes, reports and memoranda made by government agents during the course of an investigation or prosecution."); United States v. Ceballo, No. 03-CR-283 (SWK), 2003 WL 21961123, at *1 (S.D.N.Y. Aug. 18, 2003) ("Rule 16(a)(2) bars disclosure of reports generated by local law enforcement agents . . . ." (quoting United States v. Jenkins, No. 02-CR-1384 (RCC), 2003 WL 1461477, at *5 (S.D.N.Y. Mar. 21, 2003))). To the extent any such reports or notes are discoverable in some other way—for example, under 18 U.S.C. § 3500—or constitute impeachment material under Giglio, they will be timely produced in accordance with the government's obligations to produce such materials.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that this

Court should deny the defendant's pretrial motions.

Dated:     Brooklyn, New York
           July 15, 2026

                                        Respectfully submitted,

                                        JOSEPH NOCELLA, JR.
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Victor Zapana
Kamil R. Ammari
Tanya Hajjar
Assistant U.S. Attorneys
       (Of Counsel)