UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
UNITED STATES OF AMERICA,

      – against –                                No. 26-cr-108 (DLI)

JOSHUA NASS,

                     Defendant.
--------------------------------------------------------------------------x

## DEFENDANT JOSHUA NASS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS OMNIBUS PRETRIAL MOTIONS

**MEISTER SEELIG & SCHUSTER PLLC**
*Counsel for Joshua Nass*
125 Park Avenue, 7th Floor
New York, New York 10017
Phone: (212) 655-3500
Fax: (212) 655-3535

## TABLE OF CONTENTS

I.    THE INDICTMENT'S CHARGES ARE INSUFFICIENT AS A MATTER OF LAW; THE COURT SHOULD DISMISS THEM AT THIS STAGE ........................................ 1

    A.    The Court May Dismiss Legally Insufficient Charges Under Rule 12 ................... 1

    B.    The Government Cannot Charge Mr. Nass With Aiding and Abetting, As the Only Other Alleged Participant is a Government Agent ....................................... 1

        1.    *The Government's Opposition Only Confuses the Legal Bases of its Aiding and Abetting Charges* ............................................................................. 1

        2.    *The Government's Cases Do Not Salvage its Aiding and Abetting Charges* ....................................................................................................... 3

    C.    Count Two Charging Use of Interstate Facilities to Commit Extortion Should Be Dismissed As a Federal Crime Wholly Manufactured By the Government Cooperator's Actions ............................................................................................ 7

    D.    Counts Four and Five Do Not Properly Allege Cyberstalking or Travel Stalking Crimes, Warranting Their Dismissal ....................................................... 8

        1.    *Cyberstalking and Travel Stalking Statutes Do Not Criminalize Attempt Crimes* ............................................................................................ 8

        2.    *In Count Four, the Cyberstalking Count, the Indictment and Government's Discovery Do Not Allege that Mr. Nass Actually Engaged in a "Course of Conduct" to Intimidate and Harass Jane and John Does through a Campaign of "True Threats"* ................................. 12

        3.    *Count Five Should be Dismissed Because the Indictment Fails to Allege Specific "Conduct" in Which Mr. Nass Engaged During the Course of, or As a Result of, His Travel or Surveillance* ................................................. 16

        4.    *The "Place Under Surveillance" Clauses of the Travel Stalking and Cyberstalking Statutes Are Constitutionally Vague and Violate the First Amendment As-Applied to this Case* ......................................................... 18

II.    A BILL OF PARTICULARS IS REQUIRED FOR A FAIR TRIAL: THE CHARGING DOCUMENTS, GOVERNMENT FILINGS, AND DISCOVERY ARE SILENT AS TO THE CONDUCT CHARGED IN THE NEW YORK PENAL LAW VIOLATIONS .... 21

    A.    Mr. Nass Is Not On Notice of the Conduct Charged As Violations of New York Penal Law §§ 135.60, 155.30(6), 155.40(2), 155.05(2)(e) in Counts 2, 3, and 6 . 21

    B.    Federal Rule of Criminal Procedure 7, and Basic Fairness Require the Government to Provide Mr. Nass with Notice of the Conduct Charged in Counts 2, 3, and 6 ................................................................................................................ 22

i

III.    THE GOVERNMENT SHOULD BE REQUIRED TO PRODUCE INFORMATION, MATERIALS, AND DOCUMENTS REGARDING UTILIZATION OF THE DEVICE THAT FAILED TO RECORD CRUCIAL ENCOUNTERS BETWEEN MR. NASS AND THE COOPERATOR ................................................................................................... 24

    A.    Understanding What Happened During the Encounters Between Mr. Nass and the Cooperator When the Recording Device Did Not Record is Central to Mr. Nass' Trial Defense ................................................................................................... 24

    B.    Rule 16 and *Brady* Require Prompt Production ..................................................... 25

IV.    CONCLUSION ................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Counterman v. Colorado*,
   600 U.S. 66 (2023) ............................................................................................... 14

*DiSimone v. Phillips*,
   461 F.3d 181 (2d Cir. 2006) ................................................................................ 27

*United States v. Aleynikov*,
   676 F.3d 71 (2d Cir. 2012) .................................................................................... 1

*United States v. Beeman*,
   No. 01 Cr. 1141 (DAB), 2003 WL 22047871 (S.D.N.Y. Aug. 29, 2003) ................... 8

*United States v. Bellot*,
   113 F.4th 1151 (9th Cir. 2024) ........................................................................... 6, 7

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) ................................................................................ 22

*United States v. Cabello*,
   33 F.4th 281 (5th Cir. 2022) .................................................................................. 3

*United States v. Crowley*,
   236 F.3d 104 (2d Cir. 2000) .................................................................................. 1

*United States v. Davidoff*,
   845 F.2d 1151 (2d Cir. 1988) .............................................................................. 23

*United States v. Davis*,
   139 S.Ct. 2319 (2019)......................................................................................... 20

*United States v. Dennis*,
   132 F.4th 214 (2d Cir. 2025) ................................................... 10, 13, 14, 18, 19, 20

*United States v. Elusma*,
   849 F.2d 76 (2d Cir.1988) ..................................................................................... 5

*United States v. Fleury*,
   20 F.4th 1353 (11th Cir. 2021) ....................................................................... 13, 19

*United States v. Gonzalez*,
   905 F.3d 165 (3d Cir. 2018) ................................................................................ 20

*United States v. Heicklen*,
  858 F. Supp. 2d 256  (S.D.N.Y. 2012) ........................................................................ 1

*United States v. Helbrans*,
  547 F.Supp.3d 409 (S.D.N.Y. 2021) ............................................................................ 9

*United States v. Henry*,
  No. 13 Cr. 220 (RJD), 2015 WL 1258173 (E.D.N.Y. Mar. 18, 2015)......................... 8

*United States v. Hernandez*,
  730 F.2d 895 (2d Cir. 1984) ........................................................................................ 4

*United States v. Johnson*,
  No. 24 Cr. 20110, 2025 WL 1520055 (S.D. Fla. May 7, 2025)................................. 17

*United States v. Johnson*,
  No. 24 Cr. 20110, 2025 WL 1517219, (S.D. Fla., May 28, 2025)............................ 17

*United States v. Jordan*,
  927 F.2d 53 (2d Cir. 1991) .......................................................................................... 5

*United States v. Kerik*,
  615 F. Supp. 2d 256 (S.D.N.Y. 2009) ........................................................................ 1

*United States v. Ledezma-Cepeda*,
  894 F.3d 686 (5th Cir. 2018) .................................................................................... 20

*United States v. McMahon*,
  No. 21 Cr. 265 (PKC), 2024 WL 896838.................................................................. 17

*United States v. Meacham*,
  626 F.2d 503 (5th Cir. 1980) ...................................................................................... 3

*United States v. Parker*,
  165 F. Supp. 2d 431 (W.D.N.Y. 2001)..................................................................... 4, 5

*United States v. Partida*,
  385 F.3d 546 (5th Cir. 2004) ...................................................................................... 5

*United States v. Pirro*,
  212 F.3d 86 (2d Cir. 2000) .......................................................................................... 1

*United States v. Rittweger*,
  524 F.3d 171 (2d Cir. 2008) ...................................................................................... 27

*United States v. Ruffin,*
   613 F.2d 408 (2d Cir.1979) ................................................................................................... 4

*United States v. Samuels,*
   308 F.3d 662 (6th Cir. 2002) ................................................................................................ 6

*United States v. Scully,*
   108 F. Supp. 3d 59 (E.D.N.Y. 2015) .................................................................................. 22

*United States v. Sryniawski,*
   48 F.4th 583 (8th Cir. 2022) ............................................................................................... 19

*United States v. Staten,*
   581 F.2d 878 (D.C.Cir.1978).................................................................................................. 5

*United States v. Thomason,*
   991 F.3d 910 (8th Cir. 2021) ............................................................................................... 20

*United States v. Walker,*
   99 F.3d 439 (D.C.Cir.1996)..................................................................................................... 5

*United States v. Wallace,*
   85 F.3d 1063 (2d Cir. 1996) ............................................................................................. 7, 8

*United States v. Washington,*
   106 F.3d 983 (D.C. Cir. 1997)................................................................................................. 5

*United States v. Weintraub,*
   27 F. App'x 54 (2d Cir. 2001) ............................................................................................... 2

*United States v. Wills,*
   346 F.3d 476 (4th Cir. 2003) ............................................................................................... 19

*United States v. Yung,*
   37 F.4th 70 (3d Cir. 2022) ................................................................................................... 13

**Statutes**

18 U.S.C. § 2.................................................................................................................................. 4, 5

18 U.S.C. § 1951(a) ..................................................................................................................... 9, 21

18 U.S.C. § 1952(a)(3)(A) ........................................................................................................... 7, 21

18 U.S.C. § 2261A ........................................................................................... 9, 10, 11, 15, 16, 17, 19

18 U.S.C. § 2266 ................................................................................................................ 15

18 U.S.C. § 3500 ................................................................................................................ 27

18 U.S.C. §§ 2661A(1) or (2) ............................................................................................. 9

New York Penal Law § 135.60 .............................................................................. 21, 22, 23

New York Penal Law § 144.30 .................................................................................... 22, 23

New York Penal Law § 155.05(2)(e) ....................................................................... 21, 22, 23

New York Penal Law § 155.30(6), ........................................................................... 21, 22, 23

New York Penal Law § 155.40 ................................................................................ 21, 22, 23

Pub. L. 109-162 ................................................................................................................... 9

Pub. L. 113-4 ..................................................................................................................... 10

**Rules**

Fed. R. Crim. P. 7 ............................................................................................................. 22

We respectfully submit defendant Joshua Nass' reply memorandum of law in further support of his omnibus pretrial motions requesting that the Court: (1) dismiss the Indictment's charges as legally insufficient; (2) order the government to file a bill of particulars with respect to Counts Two, Three, and Six; and (3) order the government to provide limited and specific additional discovery regarding its apparent failed efforts to record conversations between its cooperating witness and Mr. Nass on January 13, 2026 and January 29, 2026.

## I.    THE INDICTMENT'S CHARGES ARE INSUFFICIENT AS A MATTER OF LAW; THE COURT SHOULD DISMISS THEM AT THIS STAGE

### A.    The Court May Dismiss Legally Insufficient Charges Under Rule 12

The government first argues that the motions to dismiss are "unripe" prior to trial. *See, e.g.,* Gov. Opp. at 22, 25, 29, 30. But the detailed factual allegations in the government's charging documents—taken as true at this stage—do not establish criminal liability. The Court should, therefore, grant the motions to dismiss. *See, e.g., United States v. Aleynikov*, 676 F.3d 71, 76–79 (2d Cir. 2012); *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000); *United States v. Heicklen*, 858 F. Supp. 2d 256, 275-76 (S.D.N.Y. 2012); *United States v. Kerik*, 615 F. Supp. 2d 256, 271-74 (S.D.N.Y. 2009). The Court need not wait to dismiss counts that are legally insufficient given the facts alleged by the government. *See, e.g., Aleynikov*, 676 F.3d at 76–79; *United States v. Crowley*, 236 F.3d 104, 108 n.6 (2d Cir. 2000) ("a claim that an indictment does not charge an offense may be raised at any time").

### B.    The Government Cannot Charge Mr. Nass With Aiding and Abetting, As the Only Other Alleged Participant is a Government Agent

#### 1.    *The Government's Opposition Only Confuses the Legal Bases of its Aiding and Abetting Charges*

In its opposition, the government did nothing to salvage the Indictment's improper charges rooted in allegations of aiding and abetting a government agent's ruse. Instead, the government

1

only confuses the charges further, contending that Mr. Nass "is charged in each count as" ***both*** "a principal and an aider-and-abettor." *See* Gov. Opp. at 8. That makes little sense. It is also seemingly at odds with the Indictment, and the government's prior representations. Specifically, during the meet and confer with counsel on June 16, 2026 the government represented that it charged Mr. Nass under an "aiding and abetting" theory of liability. *See* Mot. at 5-7. Now, the government is apparently shifting its theory. In its opposition brief, the government cryptically asserts that that Mr. Nass is both the "principal" and the "aider-and-abettor," and that Mr. Nass both "(a) engaged in conduct that violated the relevant statutes" directly, "and (b) enlisted others to take actions that would violate the relevant statutes." Gov. Opp. at 8. But the government nowhere specifies what conduct the grand jury charged as an aider and abettor, and what conduct Mr. Nass allegedly undertook in his own right as a principal. That renders the government's charges all but impossible to thoroughly evaluate as a legal matter, and poses obstacles for Mr. Nass trial preparation.[1]

The government's effort to prop up its aiding and abetting charges is also legally unsound. Perhaps recognizing the legal frailty of charging Mr. Nass with aiding and abetting a government agent, the government asserts generally "that a defendant may be charged with attempting to aid and abet a crime." Gov. Opp. at 9. Perhaps—but that does not describe the facts alleged against Mr. Nass here. The government argues that a defendant charged for a sting operation, in which "law enforcement agents posing as" criminals undertook apparently criminal acts could be charged

---

[1] Because the government's shifting positions renders preparing for trial all the more difficult, to the extent the government now seeks to charge Mr. Nass as, at times, an aider and abettor, and, at times, the principal, we request particulars in that regard as well. If the basic allegations of the government's prosecution theory continue to morph, Mr. Nass will be unable to adequately prepare for trial. *See, e.g., United States v. Weintraub*, 27 F. App'x 54, 56–57 (2d Cir. 2001) (upholding conviction where the government provided notice to the defendant regarding its aiding and abetting theory).

2

with "attempting to aid and abet," although "the principals—the undercover law enforcement agents—did not have the intent to commit the crime" that they undertook. *Id.* at 9 (quotation marks and citations omitted). The extortion and stalking charges against Mr. Nass, however, are themselves attempts. No alleged victims were ever threatened, stalked, or even contacted. *See, e.g.,* Crim. Compl. ¶¶ 5, 10, 12.

Mr. Nass' charges are, therefore, one degree more inchoate than the government's example: effectively the government is charging Mr. Nass with an attempt to aid and abet a government agent in an attempt crime. Nothing in the government's opposition suggests that such a double-inchoate offense is supported by the case law. *See, e.g., United States v. Meacham*, 626 F.2d 503, 509 n.7 (5th Cir. 1980) (describing double inchoate offenses as " the height of absurdity" to conspire to commit an attempt, an inchoate offense, explaining that "had Congress intended that there be prosecutions for conspiracies to attempt to violate [criminal statutes], it would have so provided in terms less ambiguous than those found in [federal statutes]. Congress is as much aware as we are of the venerable maxim that penal statutes are to be strictly construed."); *see also United States v. Cabello*, 33 F.4th 281, 287 (5th Cir. 2022) (where the government argued that the stature "*also* criminalized *conspiracies to attempt* to commit substantive offenses," the "court rejected that reading of the statute," and "because the Government's reading made no sense, the court held the indictment was insufficient because it failed to allege an offense."). The aiding and abetting charges thus fail as a matter of law.

### 2.    *The Government's Cases Do Not Salvage its Aiding and Abetting Charges*

Nor do the government's cases otherwise save its effort to charge Mr. Nass for aiding and abetting a government agent. While it cites cases suggesting that under some circumstances a defendant may be charged with vicarious liability for criminally engaging with a government agent, those cases are readily distinguishable from the conduct charged here. The government's

discussion of *United States v. Parker*, 165 F. Supp. 2d 431 (W.D.N.Y. 2001), is emblematic. According to the government, *Parker* is an important case as it is "the only court in the Second Circuit to confront this question" of criminal culpability for aiding and abetting a government agent. Gov. Opp. at 11. As an initial matter, *Parker's* holding is at odds with the government's theory in this case. In *Parker* "the Government's primary theory at trial [wa]s that Parker engaged in the . . . offense as the primary actor." *Parker*, 165 F. Supp. 2d at 469. Because Mr. Nass is alleged to have hired a government cooperating witness to collect a debt from the alleged victim, he plainly was not charged as the "primary actor," rendering *Parker's* holding all but irrelevant to the legal questions central to Mr. Nass' motion. *See, e.g.* Crim. Compl. ¶¶ 3, 4.

In any event, *Parker* does not support the government's position attempting to hold Mr. Nass criminally responsible for the contemplated acts of a government agent. *Parker* clearly explained that under the aiding and abetting statute, "18 U.S.C. § 2(a) . . . ***a defendant could not be found guilty as an aider and abettor of alleged criminal conduct unless the other individual was found to have committed the criminal conduct as a principal***." *Parker*, 165 F. Supp. 2d at 468 (citing *United States v. Ruffin,* 613 F.2d 408 (2d Cir.1979)) (emphasis added).[2] That is not the case here. The government's cooperating witness, who was posing during the conversations charged in the Indictment, could not be guilty as a principal. This was a setup, after all: a

---

[2] *Parker's* only statements seemingly to the contrary are not in the context of aiding and abetting liability, *see* 18 U.S.C. § 2(a), but under a distinct theory of principal-agent liability per under 18 U.S.C. § 2(b). *See Parker*, 165 F. Supp. 2d at 468-69 (stating that "18 U.S.C. § 2(b) which provides that a person who is incapable of personally committing a specified crime, but who causes another to do so may be punished as a principal," is wholly inapposite). The government has neither raised nor alleged any vicarious liability theory beyond aiding and abetting under § 2(a). The two sub-sections have different elements, and reach different sets of facts. *See, e.g., United States v. Hernandez*, 730 F.2d 895, 900 (2d Cir. 1984) (describing § 2(b) as a different "theory of criminal liability" than § 2(a), addressing their differing elements, and analyzing how the two sub-sections operate differently under a single set of facts). That renders a discussion of principal-agent liability under § 2(b) irrelevant to the viability of the charges in the Indictment.

government agent sought to entrap Mr. Nass by recoding conversations in which, ultimately, no threats were ever communicated to the alleged victims.  An aiding and abetting charge is legally insufficient, warranting dismissal.  *See, e.g., Parke*r, 165 F. Supp. 2d at 469 ("In *United States v. Elusma*, 849 F.2d 76 (2d Cir.1988), the court acknowledged that a conviction of aiding and abetting pursuant to 18 U.S.C. § 2(a) requires proof that the principal committed a criminal offense and, thus, to have had the "essential criminal intent."") (quoting *United States v. Elusma*, 849 F.2d 76, 78 (2d Cir.1988)); *see also United States v. Jordan*, 927 F.2d 53, 55 (2d Cir. 1991) (cited in Gov. Opp. at 11) ("Because the person who physically carried the heroin from Thailand to New York was a Government agent, the prosecution did not contend that he was the principal, for purposes of the substantive importation offense.") (cited by Gov Opp. at 10-11).[3]

---

[3] *United States v. Washington*, 106 F.3d 983 (D.C. Cir. 1997) (cited in Gov. Opp. 9-10), is in line with the Second Circuit case law, like *Jordan*, with respect to liability for a substantive offense: "It is true that in order to convict an accomplice of a completed substantive crime (rather than a mere attempt), 'there must be a guilty principal before there can be an aider and abettor,' and the accomplice and the principal must have a 'shared intent.'" *Washington*, 106 F.3d at 1003–04 (quoting *United States v. Staten,* 581 F.2d 878, 887 (D.C.Cir.1978), and *United States v. Walker,* 99 F.3d 439, 442 (D.C.Cir.1996)).  Thus, per *Washington*, a sting operation where a government agent functions as the principal cannot result in a charge of a substantive offense.

Paradoxically, however, *Washington* found that attempting to aid and abet—although it carries the same sentencing exposure as a substantive offense—can be manufactured through a sting operation, "look[ing] instead to the question of whether, if the facts had been as the accomplice believed them, the principal would have been guilty." *Washington*, 106 F.3d at 1005. *Washington* went on a theoretical limb, and hypothesized that aiding and abetting for an inchoate attempt crime was "permit[ed]" because "even if an offense was not actually committed, the defendant manifests the same dangerousness of character as the actor who himself attempts to commit the offense." *Id.* (quotation marks and citations omitted); *see also United States v. Partida*, 385 F.3d 546, 555 (5th Cir. 2004) (relying on *Washington*) (cited in Gov. Opp. at 10).  But criminal law does not punish character, it punishes actions undertaken with *mens rea* satisfying specific elements.

And as a practical matter, *Washington's* holding makes little sense.  Because the sanctions for a completed crime, an attempt crime, and an aiding and abetting crime are the same under federal law, it defies logic for the elements of the equally serious criminal liability of aiding and abetting and attempt to be so much easier to manufacture than the crime of aiding and abetting a completed

5

*United States v. Samuels*, 308 F.3d 662 (6th Cir. 2002), which the government cites, is consistent with *Parker*.  *See* Gov. Opp. at 10.  In *Samuels*, the appellate court upheld the district court's instruction to the jury regarding precisely the intersection of aiding and abetting and attempt at issue here.  The district court clarified:

> To aid and abet, the[ defendant] must be aiding someone who is guilty.  . . . To aid and abet, somebody else has got to be guilty and you've got to be assisting them. . . . You cannot aid and abet an offense with only the informant because the informant's not guilty of the offense.

*United States v. Samuels*, 308 F.3d 662, 668-69 (6th Cir. 2002).  The appellate court approvingly described the district court's instructions as "consistent with the law on attempt and aiding and abetting," holding that "an attempt to aid and abet is not a crime." *Id.* at 669.

That is precisely why the government's charges against Mr. Nass fail.  The law as described in *Samuels*, is directly at odds with the charges against Mr. Nass.  Mr. Nass is charged with aiding and abetting a government agent in an attempt to commit crimes against the alleged victims, but as *Samuels* unequivocally explained, aiding and abetting requires assisting "someone [else] who is guilty;" "[y]ou cannot aid and abet an . . . informant," who is "not guilty of the offense." *Id.* at 668-69.  The only person Mr. Nass could have allegedly aided and abetted is the government agent who is not guilty of the crimes charged—to the contrary, he manufactured them.  Per *Samuels*, the Indictment cannot properly charge Mr. Nass under an aiding and abetting theory of liability.

*United States v. Bellot*, 113 F.4th 1151 (9th Cir. 2024), cited by the government in its opposition brief, is not to the contrary.  *See* Gov. Opp. at 10.  As an initial matter, *Bellot* dealt post-trial with a question of notice and constrictive amendment of the indictment.  *See Bellot*, 113 F.4th at 1155-56.  And *Bellot* analyzed the difference between "aiding and abetting an attempt" and

---

offense.  Nor has the government identified Second Circuit caselaw that supports this formalistic distinction.  This Court should decline to extend *Washington* here.

"attempting to aiding and abetting." *Id.* As relevant here, however, *Bellot* was clear "that aiding and abetting an attempt requires a 'guilty principal.'" *Id.* at 1156. Mr. Nass was clearly charged with "aiding and abetting an attempt"—no extortion or stalking ever actually occurred, thus the only possible charges are attempt crimes. Because the government agent here clearly could not have constituted a "guilty principal," the black letter law recognized by *Bellot*, renders the charges legally insufficient. The Court should dismiss the charges, to the extent they are based on an aiding and abetting theory.

C.   **Count Two Charging Use of Interstate Facilities to Commit Extortion Should Be Dismissed As a Federal Crime Wholly Manufactured By the Government Cooperator's Actions**

In an effort to defend Count Two, charging Use of Interstate Facilities to Commit Extortion under 18 U.S.C. § 1952(a)(3)(A), the government attempts to construe Mr. Nass' legal motion as one testing "the sufficiency of the evidence." Gov. Opp. at 14. That is incorrect, it is fundamentally a question of law. The government's own charging documents clarify that the interstate calls contemplated in the Indictment are solely with the government's cooperating witness. *See* Crim. Compl. ¶¶ 4-12. Indeed, in its opposition the government does not contend otherwise. *See* Gov. Opp. at 12-14. That is a problem for the government. Here all of the charged cellular communications are dependent on a ruse by the government agent—that is the only link for the federal crime that otherwise charges New York State Penal Law violations. *See* Indict. ¶ 2.

Unlike the cases cited by the government, Mr. Nass's motion hinges not merely on federal jurisdiction, but on the very notions of due process: the government cannot properly manufacture the factual predicate of a federal crime, and then proceed to charge it. That is core to an *Archer* motion as well. *See, e.g., United States v. Wallace*, 85 F.3d 1063, 1065–66 (2d Cir. 1996) ("'manufactured jurisdiction concept is properly understood not as an independent defense, but as

7

a subset of three possible defense theories: (i) the defendant was entrapped into committing a federal crime, since he was not predisposed to commit the crime in the way necessary for the crime to qualify as a federal offense; (ii) the defendant's due process rights were violated because the government's actions in inducing the defendant to commit the federal crime were outrageous; or (iii) an element of the federal statute has not been proved, so federal courts have no jurisdiction over the crime") (citations omitted).

The government's cases are distinguishable.  *See* Gov. Opp. at 13-14.  *Wallace* rejected only a technically manufactured federal jurisdiction argument.  *See Wallace*, 85 F.3d at 1066.  The same is true of *United States v. Henry*, No. 13 CR 220 RJD, 2015 WL 1258173, at \*3 (E.D.N.Y. Mar. 18, 2015) ("Defendant Henry's motion does not raise either of the first two Wallace defense theories, entrapment or due process violation for outrageous government behavior.").  And *United States v. Beeman* is even farther afield, as *Beeman* relied on conduct prior to "introduction of the FBI undercover agent" to support the federal charges.  *United States v. Beeman*, No. 01 CR. 1141 (DAB), 2003 WL 22047871, at \*3 (S.D.N.Y. Aug. 29, 2003).  In this case, the only charges stem from the conversations and communications with a federal agent—the government cooperating witness—rendering *Beeman* inapposite.  The government cannot justify its efforts to federalize the New York State allegations embedded in Count Two, warranting its dismissal.

> **D.  Counts Four and Five Do Not Properly Allege Cyberstalking or Travel Stalking Crimes, Warranting Their Dismissal**
>
> > **1.  *Cyberstalking and Travel Stalking Statutes Do Not Criminalize Attempt Crimes***

Counts Four and Five do not identify any "conduct" or "course of conduct" allegedly engaged in by Mr. Nass.  These are necessary elements to the substantive crimes of Travel Stalking and Cyberstalking.  Neither subparts of the stalking statute proscribes attempt offenses within the statute.  Thus, the Indictment must allege substantive violations of Travel Stalking or

Cyberstalking to state a crime.  Counts Four and Five fail to specify any alleged conduct because none occurred.  The government's case against Mr. Nass relies entirely on meetings with a cooperating witness, which resulted in no conduct directed at the alleged victims.  Without allegations of actual "conduct" or "course of conduct," these Counts are legally deficient and must be dismissed.

The government states in its opposition brief that Counts Four and Five (the stalking counts) of the Indictment "[d]o [n]ot [a]llege [a]ttempts."  Gov. Opp. at 18, heading (b).  The government is confined to this argument because, as argued in Mr. Nass's opening brief, Congress did not criminalize an attempt to commit Travel Stalking or Cyberstalking as separate inchoate offenses. *See* Mot. at 13-17.  Congress only "proscribes attempt on a case-by-case basis by including an attempt provision (*e.g.,* 'or attempts to do so') within the specific federal offense at issue." *United States v. Helbrans,* 547 F. Supp. 3d 409, 430 (S.D.N.Y. 2021).  Here, Congress did not create separate crimes of attempted Cyberstalking or Travel Stalking by including such language in 18 U.S.C. §§ 2661A(1) or (2). *Compare* 18 U.S.C. § 1951(a) (Hobbs Act charged in Count One) ("Whoever in any way or degree obstructs, delays, or effects commerce or the movement of any article or commodity in commerce, by robbery or extortion *or attempts* or conspires so to do . . .") (emphasis added).  There is no express "or attempts to" engage in conduct or course of conduct language within the federal stalking statute. The only "attempt" language is embedded within the unique causation element of the statute, not as part of the conduct that is criminalized.

And that was intentional.  Congress restructured Section 2261A in 2013, adding a specific "conduct" element to the Travel Stalking portion of the statute, meaning that travel or surveillance no longer sufficed alone to constitute the offense. *Compare* Pub. L. 109-162, Title I, § 114(a), Jan.

5, 2006, 119 Stat. 298 ("The Violence Against Women and Department of Justice Reauthorization Act of 2005") (requiring that a criminal's "travel places [a victim] in reasonable fear of the death of, or serious bodily injury to, or causes substantial emotional distress…") *with* Pub. L. 113-4, Title I, § 107(b), Mar. 7, 2013, 127 Stat. 77 (2013) (adding the requirement that a defendant "engages in conduct" placing a person "in reasonable fear of the death of, or serious bodily injury to," or "substantial emotional distress").

The 2013 amendments also relaxed the causation, or Results Element, of the two stalking offenses—Travel and Cyberstalking—removing the requirement for proven causation of harm. Congress added language to the statute to allow a jury to find that the stalking crime was complete if the defendant "causes, attempts to cause or would be reasonably expected to cause substantial emotional distress" to the intended victim. 18 U.S.C. § 2261A(1)(B) and (2)(B).  In other words, after the amendment, a defendant could be convicted of a substantive stalking crime even if the government does not prove that the intended victim subjectively felt substantial emotional distress. With the 2013 amendments, Congress made it easier for the government to prove causation, the Result Element.

Thus, the 2013 amendments did not create a new attempt crime. It only lessened the proof requirement for causation.  After 2013, a defendant charged under §§ 2261A(1)(B) and (2)(B) can be convicted even if the victim did not actually suffer substantial emotional distress, so long as the defendant attempted to cause such distress by his conduct, or the conduct itself would be reasonably expected to produce it. *See United States v. Dennis,* 132 F.4th 214, 224 (2d Cir. 2025). This amendment created a proof alternative for the government on the third element of the crime, *i.e.,* the crime could be proven without the testimony of the intended victim.  The government can now prove the causation or Result Element by arguing a reasonable person standard, or through

10

evidence that the defendant attempted to cause his intended victim to feel substantial emotional distress even if the subjective proof was not there.

This proof alternative language within a specific element of the crime is very different from creating a separate general stalking attempt crime.  If Congress intended the latter, it would have included attempt language in the opening or preamble section of the statute, as it did in the Hobbs Act quoted *supra*, and in many other statutes within the federal penal code.

Thus, when the government states that Counts Four and Five do not allege attempts, it correctly states the law, because Congress did not proscribe attempt crimes within the Travel Stalking or Cyberstalking statutes.  However, because these statutes also require that the defendant actually "engaged in conduct" or a "course of conduct" proscribed by the statutes, and the Indictment fails to identify such conduct, it fails to state a valid cause of action under either count.[4]

The government's discovery, criminal complaint and bail letter only reveal that Mr. Nass met with the confidential witness and talked about a potential plan to collect a debt.  Such conduct can only constitute "attempt" crimes.  Because inchoate attempts are not proscribed by 18 U.S.C. § 2261A(1)(B) and (2)(B), the allegations in Counts Four and Five against Mr. Nass do not state a cause of action and must be dismissed.

---

[4] Mr. Nass also moves this Court, in the alternative, for particulars so that he can prepare a defense and avoid double jeopardy concerns.  These particulars, specifically the identification of the "conduct" Mr. Nass is alleged to have "engage[d] in" as a result of his interstate travel in Count Four, or the "course of conduct" he allegedly engaged in using computer or electronic communications systems in Count Five, would also assist this Court to clarify further that this Indictment alleges mere preparation to conduct, and not actual conduct, as is required by the stalking statutes.  The government's continued refusals to provide the Court and the defendant with this information risks a needless trial based on allegations that are glaringly insufficient as a matter of law.

11

**2.** ***In Count Four, the Cyberstalking Count, the Indictment and Government's Discovery Do Not Allege that Mr. Nass Actually Engaged in a "Course of Conduct" to Intimidate and Harass Jane and John Does through a Campaign of "True Threats"***

The only thing that the Criminal Complaint, Indictment and the government's discovery instructs is that the entirety of this case relies on Mr. Nass's instructions to the cooperating witness. The government does not allege any threatening communications made by Mr. Nass to any of the John and Jane Does. It does not allege that Mr. Nass did anything to "place under surveillance" the John and Jane Does. Indeed, the only acts by Mr. Nass alleged in the Indictment at all were his use of a computer or communications system to contact the cooperating witness, and his travel from South Carolina to New York State, in order to meet the cooperating witness. Indict. ¶¶ 4-5.

While the Indictment tracks the statutory language in Count Four ("course of conduct") and Count Five ("engage[d] in conduct"), it fails to specify what that "conduct" is in either count. Even in its response to Mr. Nass's motions to dismiss, the government only identified the non-criminal conduct by Mr. Nass of using computers and traveling: "Because – as set forth in detail in the Complaint, the Indictment, other court filings, and the discovery record – the defendant is alleged, among other things, to have traveled, used interstate facilities, and ***undertaken many other acts*** that would constitute 'conduct' or a 'course of conduct' that attempted to cause or would reasonably be expected to cause harm to his victims…" Gov. Opp. at 21 (emphasis added). The question remains what the "many other acts" are.

The Criminal Complaint, other court filings (*i.e.,* the government's bail letter), and the government's discovery all clearly identify what Mr. Nass's alleged acts included: (1) three in-person meetings with the cooperating witness, (2) communications by phone and text with the cooperating witness, and (3) ***zero*** contacts with the two John Does and Jane Doe during the time Mr. Nass communicated with the confidential witness. In other words, despite its protestation, the

12

government's case is an ***attempt*** crime, just as it is in Count One. Perhaps that is why the government does not want to identify the alleged "conduct" or "course of conduct" that it charges in Counts Four and Five. It does not want to admit that its only evidence includes alleged preparation and strategizing with the confidential witness about how to proceed with the Jane and John Does. There are no alleged acts taken against them. This whole case is only about what was discussed between Mr. Nass and the confidential witness.

A general survey of Cyberstalking (and Travel Stalking) cases reveals that this case is one of first impression. There is no case that supports a finding that the stalking statutes can be proven absent a showing of specific conduct engaged in by the defendant with the intent to intimidate and harass that could result in substantial emotional distress to the intended victims. All cyberstalking cases involve a pattern of behavior, or a sustained and prolonged "course of conduct" to threaten or cause fear or substantial emotional distress to its recipient. That is the essence of the cyberstalking offense. *See Dennis,* 132 F.4th at 230-33 (affirming conviction of defendant law firm partner who engaged in campaign of sending repeated threatening electronic communications to his former law firm partners); *United States v. Yung*, 37 F.4th 70, 74-75 (3d Cir. 2022) (affirming conviction of law school candidate who was denied admission and launched a cyber-campaign against his interviewer, including fake obituaries, impersonating the interviewer in blog posts bragging about rape and child abuse, and creating fake solicitations for "sex slaves" and including the interviewer's home address and contact information such that strangers were appearing at the interviewer's house); *United States v. Fleury*, 20 F.4th 1353, 1358 (11th Cir. 2021) (affirming cyberstalking conviction of defendant who posted on Instagram and sent threatening messages posing as various high-profile mass murderers, including the perpetrator of a high school mass shooting, and sent these messages to three family members who lost loved ones in the shooting).

These cases highlight the absurdity of the cyberstalking charge in this case.  There are no alleged threats posted anywhere, no messages sent, no communications formed or even drafted, and no communications or computer systems allegedly utilized other than between Mr. Nass and the cooperating witness.

In refusing to include an attempt crime within the stalking statute, Congress understood the difficulty of criminalizing an attempted cyberstalking crime.  How can a court determine whether any attempted "course of conduct" might run afoul of the First Amendment when the conduct did not occur?  The very essence of the crime is the communication of "true threats" to a victim that is at least reasonably foreseeable to cause substantial emotional distress to its intended victim. Until the conduct occurs, this analysis cannot be performed by a reviewing court.  The content of the conduct must be evaluated under the principles of the First Amendment.  If the conduct is not formulated or never ripens to specific content, it cannot be constitutionally evaluated.  Attempted conduct that is expressive or includes speech content does not ripen until a specific course of conduct is actually engaged.  That is why Congress, in its wisdom, did not create a federal attempt crime within the federal stalking statute.  The means and manner in which the conduct is performed is critical to determine whether it includes protected speech or has no value. *See Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (true threats fall outside the protection of the First Amendment when they are "serious expression[s] conveying that a speaker means to commit an act of unlawful violence") (internal quotations omitted).[5]

---

[5]  The government claims that "[t]he Defendant [m]isreads *Dennis*." Gov. Opp. at 21.  The government claims that the conduct alleged in the cyberstalking count is not content-based. *Id.* at 22.  It states cryptically that "[t]he government expects that the proof at trial will demonstrate that the defendant intended, among other things, that the CW surveil, harass, and intimidate the victims in this case." *Id.*  The government conflates the intent, or *mens rea,* requirement with the *actus reus* elements.  The reason we cannot evaluate whether the alleged "course of conduct" involves

The statute's failure to proscribe attempt conduct is also why the Court should reject the government's request to find this motion "unripe." Gov. Opp. at 22. These motions are ripe because the conduct alleged is only in the preparatory stage. No course of conduct actually occurred. Indeed, as stated in Mr. Nass's opening brief, Congress specifically defined "course of conduct" in the cyberstalking statute as a "pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266. Here, in the context of an attempt crime, it makes no sense to determine whether the defendant engaged in conduct involving "two or more acts."

The Cyberstalking statute expressly requires that the defendant use a computer or electronic communications system to engage in a pattern of at least two acts, a "course of conduct." 18 U.S.C. § 2261A(2)(B). The statute does not state—to engage in, or attempt to engage in, a course of conduct. That is not the statutory language.

Mr. Nass is not alleged to have engaged in a course of conduct to threaten Jane Doe or the two John Does. In the light most favorable to the government, he is alleged to have discussed a potential plan with a government cooperating witness of approaching the Jane or John Does in an

---

content or non-content-based conduct is that the government refuses to tell us exactly what "course of conduct" was engaged in by Mr. Nass to make out the elements of Cyberstalking. Curiously, even the conversations between the cooperating witness and Mr. Nass included plans to communicate with the Jane or John Does, so it is hard to divine what the government means when it states the evidence here implies "non-expressive acts." Gov. Opp. at 22.

The substantive cyberstalking statute requires elements including an actual "course of conduct" to intimidate and harass to cause substantial emotional distress to identified victims using computers or electronic-based transmissions. This Indictment includes no specified conduct because the evidence is confined to Mr. Nass's meetings with the cooperating witness. Mr. Nass is not alleged to have ever engaged in any "course of conduct" directed at the alleged victims.

15

effort to collect a debt.[6] That plan—or "course of conduct"—was never "engaged in." Thus, Count Four must be dismissed.

> **3**. ***Count Five Should be Dismissed Because the Indictment Fails to Allege Specific "Conduct" in Which Mr. Nass Engaged During the Course of, or As a Result of, His Travel or Surveillance***

As stated above, Congress did not create a general inchoate attempt crime in either part of the federal stalking statute. In the Travel Stalking section, in 2013 as amended, Congress added a separate "conduct" requirement to the interstate travel element. *See* 18 U.S.C. § 2261A(1). It did not include the necessary language to incorporate attempt crimes. The statute does not state: in the course of, or as a result of, such travel or [surveillance] presence engages in, or attempts to engage in, conduct. It only states "engages in conduct." *Id.*

Count Five does not identify what the additional conduct is, and as stated above, more than travel or surveillance is required. The government must also prove that "and in the course of, or as a result of, such travel or [surveillance] presence [the defendant] engages in conduct" to cause harm. 18 U.S.C. § 2261A(1). There is no indication in the Indictment what this additional conduct is, and the government refused to identify any conduct in its opposition brief. *See* Gov. Opp. at 31-32.

---

[6] The government takes issue with our describing this case as a "sting operation." *See* Gov. Opp. at 15, n.3 (protesting that "the defendant repeatedly mischaracterizes the case as a 'undercover government 'sting' operation'." While the cooperating witness was not a law enforcement agent, he acted as a government agent, or "surrogate," in that he always worked under the instruction and direction of law enforcement, who told him what to say and do when he met with Mr. Nass. That is a classic "sting" operation. *See* Graeme R. Newman, "Sting Operations," Office of Justice Programs, U.S. Dept. of Justice, No. 220724 (Oct. 2007), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/sting-operations (sting operations contain four basic elements: (1) an opportunity or enticement to commit a crime, either created or exploited by police; (2) a targeted likely offender for a particular crime; (3) an undercover or hidden police officer or surrogate, or some form of deception; and (4) a "gotcha" climax when the operation ends with an arrest).

The government is wrong that interstate travel satisfies the *actus reus* element of Travel Stalking. *See* Gov. Opp. at 20 ("The elements of Counts Four and Five make clear that the *actus reus* of the crime is satisfied by 'interstate travel' or the 'use' of an interstate facility."). Perhaps the government relied on a pre-2013 version of the law, but the 2013 amendments clearly changed this. The "engages in conduct" language added by Congress in 2013 clearly is in addition to any travel or surveillance, and must be done with the intent to harass and intimidate, and at least be reasonably foreseeable to cause substantial emotional distress. *See United States v. Johnson*, No. 24-CR-20110, 2025 WL 1520055 (S.D. Fla. May 7, 2025), *adopted by* 2025 WL 1517219, (S.D. Fla., May 28, 2025) ("Congress restructured Section 2261A in 2013, adding a "conduct" requirement (which means travel or surveillance no longer sufficed alone) and splitting what some courts had previously treated as a single, indivisible offense into alternative elements.").

The government cannot allege this additional "conduct" element because none occurred for reasons explained above. There are no allegations that Mr. Nass traveled or surveilled, and "as a result of[ ] such travel or [by his] presence engaged in conduct" with intent to intimidate and harass and cause substantial emotional distress to the Jane and John Does. 18 U.S.C. § 2261A(1). The travel alleged in the Indictment was to meet the cooperating witness, and there are no allegations Mr. Nass surveilled, or caused someone else to surveil, the Jane and John Does, or that during this travel or surveillance Mr. Nass engaged in some additional conduct to intimidate or harass them. There was no identified "conduct" because the evidence is limited to meetings with the cooperating witness. That is the reason the government refuses repeatedly to allege any "conduct" other than travel. *Compare United States v. McMahon*, No. 21 Cr. 265 (PKC), 2024 WL 896838, at *15 (E.D.N.Y. March 1, 2024) (affirming substantive interstate stalking conviction

17

based on evidence that defendant provided home address of victim allowing co-conspirator to surveil and confront victim at various locations for purposes of coercing victim to return to China).

As in the case of the Cyberstalking statute, there are no cases that support a general attempt theory of conviction for the post-2013 version of the Travel Stalking statute. For these reasons, Count Five must be dismissed.

4. *The "Place Under Surveillance" Clauses of the Travel Stalking and Cyberstalking Statutes Are Constitutionally Vague and Violate the First Amendment As-Applied to this Case*

The government argues that the vagueness and First Amendment challenges in Mr. Nass's motion are unripe. *See* Gov Opp. at 30-31. Again, the Court should reject the government's efforts to avoid decision on its vacant Indictment.

Here, the government's charge that Mr. Nass "place[d] under surveillance" the Jane and John Does is completely devoid of any factual basis. The Court should not countenance the government's refusal to explain this claim in Counts Four and Five. As stated in his opening brief, the only evidence related to "place under surveillance" is a comment made by Mr. Nass in one of the recordings with the confidential witness. *See* Mot. at 29 (citing Crim. Compl. ¶ 11). The government relies on Mr. Nass's communication to the cooperating witness "confirm[ing]" that John Doe 2 was in Miami, Florida at a point in time as providing sufficient evidence to charge him with "plac[ing John Doe 2] under surveillance" as contemplated in the stalking statutes. This misplaced reliance proves the constitutional vagueness and First Amendment deficiencies to this element in the stalking statutes.

The two text messages identified in the government's complaint are legally insufficient to prove the element of "plac[ing] under surveillance to intimidate and harass" as charged in Counts Four and Five. These messages actually include protected speech. In *Dennis*, the Second Circuit limited the scope of the meaning of "harass or intimidate" in the stalking statutes. Specifically,

18

the Court held that "[n]o constitutional concern is present, however, when 'the government must identify sufficient evidence for a jury to find that [a defendant] acted with intent to 'harass' or 'intimidate' in a sense that is not protected under the First Amendment,' such as by the communication of a 'true threat.'" *Dennis*, 132 F.4th at 228 (quoting *United States v. Sryniawski*, 48 F.4th 583, 587 (8th Cir. 2022)). In *Dennis*, the Second Circuit adopted the definition of "true threat," given by the Eleventh and Fourth Circuits in *Fleury* and *Willis*. *Id.* at 229; *see Fleury*, 20 F.4th at 1372) (defining "true threat" as meaning a threat "made under circumstances that would place a reasonable person in fear of being kidnapped, killed, or physically injured"); *United States v. Wills*, 346 F.3d 476, 494 (4th Cir. 2003) (affirming jury instruction where government had to prove defendant "committed an act of placing [victim] in reasonable fear of death or serious bodily injury"). Here, the text messages identified in the government's complaint do not come close to meeting this definition of true threat. *See* Crim. Compl. ¶ 11 ("NASS suggested that the Confidential Witness "mention" to John Doe 2 that the Confidential Witness knew that John Doe 2 'was in Miami[,] as a way of showing you're keeping tabs."). At worst, this is exactly the kind of "vexing" or "annoying" kind of harassment that was found to be protected speech in *Dennis*, 132 F.4th at 228 ("The First Amendment [ ] 'protects a variety of speech that is intended to trouble or annoy, or to make another timid or fearful'") (quoting *Sryniawski*, 48 F.4th at 587).

The government also fails to claim how Mr. Nass came to know the location of John Doe 2. There is no allegation that Mr. Nass traveled there or by his "presence," or presence of another, engaged in conduct to intimidate and harass by making "true threats." 18 U.S.C. §§ 2261A(1)(B) and (2)(B); *Dennis*, 132 F.4th at 229. Mr. Nass could have heard from colleagues, friends, or others that John Doe 2 was in Miami. None of that should satisfy the "place under surveillance" element of Counts Four and Five. That also would be protected speech. Simply put, the vagueness

19

of this element, particularly as-applied here, could sweep in innocent—and constitutionally protected—conduct such that ordinary citizens would not know what is proscribed by this element. *United States v. Davis,* 139 S.Ct. 2319, 2323-24 (2019) ("Vague laws . . . leave people with no sure way to know what consequences will attach to their conduct. When Congress passes a vague law, the role of courts under our Constitution is . . . to treat the law as a nullity and invite Congress to try again.").

If the statute were to ensnare innocent conduct such as Mr. Nass learning of another person's whereabouts based on a conversation with a third party, or even after asking a private investigator to determine a person's location (that is not what happened here), the conduct proscribed by this statute is both unconstitutionally vague and violates the First Amendment. Even if communicating the "surveillance" information to John Doe 2 is intended to annoy, vex or trouble him, it is constitutionally deficient under *Dennis*, 132 F.4th at 228.

There are no cases that interpret the "surveillance" element in the stalking statutes this broadly. Uniformly, the case law interpreting this statutory language requires a showing of behavior that is intended to cause bodily harm or unlawful violence. *See e.g., United States v. Gonzalez,* 905 F.3d 165 (3d Cir. 2018) (surveillance evidence included soliciting others to drive around victim's house and report on what was observed; keeping a daily log tracking victim's movements over 12-day period; and taking photos of children leaving residence to be sent to victim, all of which resulted in murder of victim); *United States v. Ledezma-Cepeda*, 894 F.3d 686 (5th Cir. 2018) (surveillance included GPS-tracking and conducting in-person surveillance around victim's house for a few months; tracking the victim's sister-in-law; putting surveillance cameras in front of the victim's house, all of which resulted in victim's murder); *United States v. Thomason***,** 991 F.3d 910 (8th Cir. 2021) (surveillance included placing tracking device in victim's vehicle;

20

replacing the device multiple times; keeping a surveillance log; approaching victim during surveillance; possessing handgun, taser, tape in surveillance car).  These cases highlight the level of evidence required to avoid constitutional concerns.  The allegations in this case pale in comparison.  The "place under surveillance" charges in Counts Four and Five create constitutional deficiencies under both the First and Fifth Amendments and must be dismissed.

II.   **A BILL OF PARTICULARS IS REQUIRED FOR A FAIR TRIAL: THE CHARGING DOCUMENTS, GOVERNMENT FILINGS, AND DISCOVERY ARE SILENT AS TO THE CONDUCT CHARGED IN THE NEW YORK PENAL LAW VIOLATIONS**

A.   **Mr. Nass Is Not On Notice of the Conduct Charged As Violations of New York Penal Law §§ 135.60, 155.30(6), 155.40(2), 155.05(2)(e) in Counts 2, 3, and 6**

The government accuses Mr. Nass of moving for a bill of particulars for "generic reasons." Opp. at 31.  Not so.  The Indictment is extraordinarily opaque, rendering a bill or particulars uniquely necessary.  The Indictment's six counts charge no fewer than six disparate statutes, all with different elements.  But neither the charging documents, nor the discovery provide a hint of how the government can meet out the factual bases of several of the differing statutes.

Counts two, three, and six, charging violations of the Travel Act, 18 U.S.C. § 1952(a)(3)(A), incorporate Hobbs Act Extortion, and four New York Penal Law violations.  *See* Indict. ¶¶ 2, 3, 6 (each incorporating 18 U.S.C. § 1951(a), and New York Penal Law §§ 135.60, 155.30(6), 155.40(2), 155.05(2)(e)).  The elements of the New York State Penal Law provisions are different from both the Hobbs Act extortion, and from each other.  That renders the factual predicate charged as to one statute, inapplicable to allege the elements of the other statutes.  *See* Mot. at 32-41.

For example, while the government's Hobbs Act extortion theory is wrong as a matter of both fact and law, its general outlines are clear: the government charges that Mr. Nass hired the government's confidential witness to threaten the alleged victims to extract payment.  *See, e.g.,*

21

Crim. Compl. ¶¶ 4-12.  The same is not true of many of the elements of the New York State Penal

Law provisions incorporated into counts two, three, and six.  Several elements are unrelated to the

Hobbs Act allegations, and require specific factual predicates wholly absent from the pleadings

and discovery.  The following questions remain:

- What conduct did the jury charge as ***theft or stealing***, an element of New York Penal Law §§ 144.30, 155.40 charged in counts two, three and six?

- What conduct did the jury charge as ***threatening the alleged victim with criminal exposure, or publicizing a secret***, an element of New York Penal Law §§ 135.60(4), (5), 155.05(2)(e)(iv), (v)?

- What conduct did the jury charge as ***threats that Mr. Nass would "engage in some other conduct constituting a crime***" or perform ***"another act" that would be to the alleged victims' detriment***, an element of New York Penal Law §§ 135.60(3), (9), 155.05(2)(e)(iii), (ix)?

*See* Mot. at 31-37.

All of those particulars are necessary elements of the crimes charged in the Indictment.

But Mr. Nass does not know what conduct the grand jury found probable cause to Indict under

New York Penal Law §§ 135.60, 155.30(6), 155.40(2), 155.05(2)(e), charged in counts two, three

and six.  *See* Indict. ¶¶ 2, 3, 6.  He is thus unable to prepare his trial defense.

> **B.    Federal Rule of Criminal Procedure 7, and Basic Fairness Require the Government to Provide Mr. Nass with Notice of the Conduct Charged in Counts 2, 3, and 6**

Federal Rule of Criminal Procedure 7 effectively requires the government to provide notice

of the basic facts underlying an indictment's charges.  *See*  Fed. R. Crim. P. 7(c)(1) (an "indictment

or information must" contain" the essential facts constituting the offense charged"); *United States

v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (a defendant may obtain "a bill of particulars in

order to identify with sufficient particularity the nature of the charge[s] pending against him,

thereby enabling [the] defendant to prepare for trial [and] to prevent surprise."); *accord* Fed. R.

Crim. P. 7(f).

22

In practical terms, that means the government must inform a defendant of the conduct the grand jury charged in the Indictment, and that it intends to provide at trial. *See, e.g., United States v. Scully*, 108 F. Supp. 3d 59, 126 (E.D.N.Y. 2015) (requiring the government to provide a bill of particulars stating the specific conduct underlying each count of the indictment); *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (vacating conviction where bill of particulars was denied as the "indictment put[] Davidoff on notice that he will be obliged to defend against extortionate schemes directed at one company," but "[a]t trial Davidoff [wa]s then confronted with evidence of extortions aimed at entirely different companies").

Mr. Nass is entitled to know what conduct constituted the alleged violations of New York Penal Law §§ 135.60, 155.30(6), 155.40(2), 155.05(2)(e).  That information is not in the Criminal Complaint.  *See* Crim. Compl. ¶¶ 4-12 (nowhere detailing alleged theft or stealing, per New York Penal Law  §§ 144.30, 155.40; nowhere detailing threats against the alleged victims with criminal exposure, or publicizing a secret, per New York Penal Law §§ 135.60(4), (5), 155.05(2)(e)(iv), (v); and nowhere detailing threats that Mr. Nass would "engage in some other conduct constituting a crime" or perform "another act" that would be to the alleged victims' detriment, per New York Penal Law §§ 135.60(3), (9), 155.05(2)(e)(iii), (ix)).  That information is not in the bare bones Indictment.  *See* Indict. ¶¶ 2, 3, 6 (same).  That information is not in the government's bail filing.  Nor is it detailed in the discovery produced thus far.  Mr. Nass is left guessing what are the crimes charged in counts two, three and six.

And tellingly, while the government insists that its "detailed filings" contain all of the information Mr. Nass needs to understand the charges against him, it does not say where that detail is, or what it comprises.  Gov. Opp. at 33.  Beyond platitudes and string cites, the government's opposition says very little.  It provides zero factual allegations relevant to the New York Penal

Law charges. And it does nothing to illuminate Mr. Nass's fundamental questions: what alleged conduct constitutes the elements charged in counts two, three, and six. The Court should order the government to file the requested bill of particulars accordingly.

**III**. **THE GOVERNMENT SHOULD BE REQUIRED TO PRODUCE INFORMATION, MATERIALS, AND DOCUMENTS REGARDING UTILIZATION OF THE DEVICE THAT FAILED TO RECORD CRUCIAL ENCOUNTERS BETWEEN MR. NASS AND THE COOPERATOR**

   **A.**   **Understanding What Happened During the Encounters Between Mr. Nass and the Cooperator When the Recording Device Did Not Record is Central to Mr. Nass' Trial Defense**

Based on the charging documents and discovery, the government's case against Mr. Nass is anchored by just a handful of encounters between Mr. Nass and the government's cooperating witness over an approximately one month period. *See* Crim. Compl. ¶¶ 5, 6, 8, 9, 10, 12. Mr. Nass and the cooperating witness met on three dates: January 8, 2026; January 29, 2026; and January 30, 2026. They also spoke on the phone a few times, including four times on January 13, 2026 when federal agents were present with the cooperating witness. The plan, apparently, was for the cooperating witness to encourage Mr. Nass to pursue violent extortion against the alleged victims, and for the cooperating witness to record his encounters with Mr. Nass.

That did not happen. Mr. Nass never authorized violence against the victims. And, the cooperating witness tried—but failed—to record some of the encounters. For some reason, the cooperating witness did not record the meeting with Mr. Nass on January 29, 2026, or any of the four phone calls on January 13, 2026. How and why did those failures occur? That still remains a mystery.

But the answer is crucial to Mr. Nass' defense. Indeed, as the Criminal Complaint clarifies, the recorded conversations between Mr. Nass and the confidential witness do not contain authorizations by Mr. Nass to threaten the alleged victims or commit acts of violence. The ***only***

24

allegations that Mr. Nass "instructed the Confidential Witness to physically assault John Doe 2 and to threaten John Doe 2," draw from the confidential witness' recounting of the unrecorded January 29 meeting—not the recorded encounters. *See* Crim. Compl. ¶ 10.

Understanding why the January 29 meeting and the four January 13 calls did not record is thus important for Mr. Nass trial defense. Did the recording device malfunction? Was it human error? Or, was it purposeful human intervention? The answer may prove to be the key to Mr. Nass' defense. The government must, therefore, produce the information in its possession now—while there is still time for Mr. Nass to use it to prepare for trial.

**B.      Rule 16 and *Brady* Require Prompt Production**

Although insisting that Mr. Nass "is not entitled to additional discovery disclosures," the government has continued to make piecemeal disclosures, undermining its stated position. *See* Gov. Opp. at 35. Even the government appears to understand that Mr. Nass is entitled to know (i) ***what*** happened to the recording device, and (ii) ***why***, during those pivotal January 13 and January 29 encounters with the confidential witness.

Thus, on July 13, 2026, just days before filing its opposition brief, the government sent defense counsel a letter disclosing ███████████████████████████ *See* Ex. A.[7] But that letter only raised more questions. Specifically:



- ███████████████████████████████████████████████████ On what basis does the government make that technical assertion? It has provided neither

---

[7] Because the government produced its July 13 letter, attached as Exhibit A, as "Sensitive Discovery Material, under the Protective Order, Mr. Nass separately sought leave to file the letter under seal. *See* Protective Order, ECF Doc. 35, at ¶ 5; *see* ECF Doc. 49, Sealing Mot.

expert disclosures, technical manuals, operating procedures, nor FD-302 and FD-1023 reports documenting as much.

So, we do not know what happened to the device after the January 8 recordings were downloaded—after which it, apparently, did not capture phone calls on January 13, or a meeting on January 29. We do not know whether the device was ▮▮▮▮▮▮▮ Nor do we know whether, as a technical matter, ▮▮▮▮▮ is necessary for the device to continue recording.



That is pure speculation by the government. Without the FBI reports or notes regarding the circumstances of the device's operation, we cannot know for sure what happened.



But we do not know a number of crucial pieces of information. Did the device turn on? Where was the device between January 8 when it worked properly, and January 29 when it apparently did not? Who operated the device? Was it an FBI agent or the confidential witness? This information is central to evaluating the credibility of the government's suggestion that the device simply malfunctioned during the January 13 calls and the January 29 meeting—and thus the credibility of the government's allegations against Mr. Nass overall.



The government's version of the January 29 meeting between Mr. Nass and the confidential witness, and the January 13 call are central to the government's extortion charges at

26

the very heart of the Indictment.  Defending against those allegations requires, in large part, challenging the credibility of the government's factual account.  The absence of recordings during those pivotal encounters with the confidential witness are thus a substantial element of the defense. As is **why** the recordings are unavailable.  Of course, it makes a big difference to Mr. Nass' trial defense whether the device malfunctioned (on two separate dates: January 13 and January 29), or whether the agent or confidential witness' conduct resulted in the device being unable to record.

That information is thus not just relevant to the defense, but potentially exculpatory *Brady* material.  Disclosure of the government's notes, and documents regarding the device's technical information and implementation between January 8, when it last functioned, and the present, is necessary for Mr. Nass to present a fulsome defense at trial.  The Court should, therefore, order the government to promptly disclose that information, as itemized in Mr. Nass' moving brief, to ensure Mr. Nass can adequately utilize the information in his trial preparation.  *See* Mot. at 33-34; *see e.g., United States v. Rittweger,* 524 F.3d 171, 181 n.4 (2d Cir. 2008) ("Complying with the Jencks Act . . . does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500."); *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) (*Brady* requires that "the defense [have an] opportunity to use the evidence when disclosure is made.").

27

## IV.    CONCLUSION

For the reasons stated above and in his moving brief, Defendant Joshua Nass respectfully requests that this Court grant his motions and: (1) dismiss the Indictment's charges as legally insufficient; (2) order the government to file a bill of particulars; and (3) order the government to provide limited and specific additional discovery regarding its apparent failed efforts to record conversations between its cooperating witness and Mr. Nass on January 13, 2026 and January 29, 2026.

Dated: August 4, 2026              Respectfully submitted,
       New York, New York

                                   MEISTER SEELIG & SCHUSTER PLLC

                    By:  _____/S/_____

                                   Henry E. Mazurek
                                   Ilana Haramati
                                   125 Park Avenue, Suite 700
                                   New York, New York 10017
                                   hem@mss-pllc.com
                                   ih@mss-pllc.com

                                   *Counsel for Defendant Joshua Nass*

28